## Pollard *v.* Lyman.

### In the Court below,

JOSEPH LYMAN, MOSES BLISS, JONATHAN DWIGHT, JOHN HOOKER, GEORGE BLISS, JOSEPH WILLIAMS, WILLIAM SMITH, JAMES S. DWIGHT, DANIEL LOMBARD, JONATHAN DWIGHT, jun. WORTHINGTON HOOKER, WILLIAM ELY, DAVID KING, EBENEZER KING, jun. and GIDEON GRANGER, *Petitioners;* ROBERT POLLARD and GEORGE PICKETT, *Respondents.*

The respondents' answer to a bill in chancery, praying for a disclosure, is conclusive as to the facts stated therein.

Mere loss in a bargain, resulting not from fraud, nor the failure of a warranty, is not a ground of relief.

The doctrine of implied warranty does not apply to lands.

Failure of consideration, where the consideration *stipulated* is *received*, affords no ground of relief.

THIS was a petition in chancery to the Superior Court.

The petitioners stated, that on the 5th of December, 1795, they severally advanced to *William Ely* certain sums of money, amounting, with the sum to be furnished by him, to $ 14,411, and authorized him, by a letter of attorney, to vest the same in such purchases of good unlocated, or uncultivated lands, in Virginia, as he thought would best promote the interest of the person advancing the money as aforesaid ; and also authorized him, in case he deemed it for the interest of his principal, to bind him to pay his proportional share of the purchase money; that the petitioners severally gave orders to *Ely* to take all conveyances of the lands, which he should purchase for them respectively, in the names of *Jonathan Dwight, John Hooker, George Bliss,* and *Gideon Granger,* jun. which they were to hold for the benefit of the proprietors ; that *Ely* proceeded directly to Virginia, and effected various purchases of lands lying in that State, for the benefit of the petitioners, within the power and according to the authority to him given as aforesaid ; that while he remained there, the respondents applied to him, and proposed to sell him 150,000

acres of land, which they represented as lying in the County of Wythe, in Virginia, and described the same by particular metes and bounds ; that they affirmed to *Ely*, to induce him to purchase, that they had a good and indefeasible title to these lands, and that the same were situated in the midst of a well settled country, and were taken up by an early location, at a time, when there was a great tract of vacant lands, in that part of the State, so that the person locating the same had a great opportunity to select a tract of good and valuable lands, and that said tract of 150,000 acres was of great value ; that still further to induce *Ely* to purchase this tract, they laid before him a highly finished map or chart, with various fine rivers and streams delineated thereon, as watering the tract and greatly fertilizing the land, all leading through and off from the same, and connecting themselves with other great rivers in the State, thereby forming a most easy access to said lands, and almost every part thereof, and also affording a ready, cheap, and convenient communication from said tract of land to various other parts of the State, and elsewhere, which map or chart the respondents affirmed to *Ely* was a true and just representation of the said lands, and of the waters upon the same ; that *Ely*, induced by these representations, and believing them to be true, on the 12th of March, 1796, purchased of the respondents the aforesaid tract of land, for which he agreed to give them $ 16,500 payable in three instalments of $ 5,500 each, and to secure the payment thereof, on the 28th of March, 1796, he executed and delivered to them three several bonds, for $ 5,500 each, one payable on the 10th of June, 1796, another on the 12th of March, 1797, and the other on the 12th of March, 1798 ; and that, on the same 12th of March, 1796, the respondents, by their warranty deed, undertook to convey said lands to said *Dwight*,

HARVARD LAW SCHOOL LIBRARY

*Hooker*, *Bliss*, and *Granger*, for the benefit of the petitioners.

The petitioners also stated, that they had paid to the respondents the two first mentioned bonds, amounting, with the interest thereon, to $13,057 50 ; and that on the other bond, the respondents had commenced a suit, before the Hartford County Court, which they were attempting to press into judgment.

The petitioners then averred, that the respondents never had any legal title to the said 150,000 acres of land, or to any part thereof ; that the lands are not, and cannot be, of any value whatever ; that they are altogether deficient from the description given of them to *Ely*, at the time of the purchase, for that the same lands are a mere pile of stupendous, inaccessible mountains, wholly incapable of settlement, and even incapable of being surveyed ; that the map shewn to *Ely* is an unfair and totally false representation of the property, with respect to the waters on the same, their location, and courses, for that many of the streams never had existence, and the courses of others, if the tumbling of water from one huge precipice to another merit the appellation of a water-course, are wholly deficient from the representations of the map ; and that these facts the respondents well knew, but concealed them from the knowledge of *Ely*, and the rest of the petitioners, with an intent to decoy him into the purchase of said lands.

The petitioners further stated, that the respondents were bankrupts, or, at least, in failing circumstances ; that the petitioners could not have process of law upon the covenants in said deed, before any court of law in this State, nor could damages be recovered, before any

court of law whatever, for the defect of value in said lands, upon any suit to be brought on said covenants; that in the peculiar situation of the petitioners, it would ruin them to pay the money demanded by the respondents, and seek redress in a distant court ; that the petitioners had no defence at law, in said suit, and could have no relief, unless by the interposition of a court of chancery.

The bill, after reciting that the facts stated therein rested only within the knowledge of the respondents and the petitioners, prayed, that the respondents might be compelled to disclose, on oath, all their knowledge with respect to the same.

The petitioners concluded their bill, by praying for a perpetual injunction on the bond in suit, and for a restoration of the money, that had been paid on the other bonds, together with interest.

The disclosure was ordered, was regularly made before commissioners in Virginia, and was returned to the Court, and became parcel of the record.

In the disclosure, the respondents say, that in the year 1795, they became acquainted with *Ely ;* that in the summer of that year, he went from Richmond to Kentucky, and returned through the County of Wythe ; that after his return, he particularly described to the respondents the lands in that County, and represented them as extremely valuable ; that the respondents, observing him to be particularly pleased with that part of the country, and having a tract of land, containing 150,000 acres, lying there, for which they had paid a valuable consideration, offered to sell the same to him, infor-

ming him, that they knew nothing of the quality of that particular tract, nor had they, or either of them, any particular knowledge of that part of the country, neither of them, at that time, having been within one hundred and fifty miles of it, but observing, that the title being guarantied to them, by a responsible person, and having obtained a grant for the same from the Commonwealth of Virginia, they would, on obtaining a satisfactory price, undertake to give a deed, in fee-simple, with a general warranty ; that in order to satisfy *Ely* with respect to the actual shape, and, as far as they could, with respect to the relative situation of said tract, they procured, from the register of the Land-Office, a copy of the plat, and certificate of the survey, as returned by the surveyor of the County of Wythe, in which were inserted not only the shape, and boundaries of said tract, with the water-courses, which passed through it, but the date of the entry, and the time when the survey was made ; that this was a true copy of the plat and certificate of survey, which the respondents bought for a valuable consideration, and shewed it to *Ely*, without any colouring given to it by them ; and, that if there be any inaccuracy, or uncertainty therein, it is not justly imputable to them. They deny that they knew any thing of the actual or intrinsic value of the land, and aver, that they never informed *Ely* any thing relative thereto, nor gave him any other information with regard to its situation, than what the plat and certificate of survey exhibited ; but from the solicitude expressed by him to become the purchaser, and from his having passed through the County of Wythe, they did believe he was possessed of much better information on the subject, than they possessed. They also aver, that *Ely* appeared to be satisfied with his own knowledge, as to the situation, quality, and value of the land ; and that he

did not enquire relative thereto ; and discovered no solicitude, except as to the title only.

The respondents admit, that they informed *Ely*, that they had a good title to the land, and were seized of the same in fee-simple, and aver, that such were the facts ; they admit, that *Ely* made the purchase as set forth in the petition, but deny that he was induced thereto in consequence of any representations relative to the value of the land, or any other promise or assurance, made by them, or either of them, other than their agreement to warrant the title ; they also admit, that they did execute a deed of said tract of land, in fee-simple, with a general warranty, to the persons named in the bill, for the use and benefit of the petitioners, and that, by the tenor of that deed, they are bound to make good any deficiency, which there may be in quantity, in said tract, and also to defend the title ; they further admit the execution of the bonds, the satisfaction of two of them, and the pendency of a suit on the other to enforce a collection. The respondents conclude their answer, by a positive denial of all fraud and combination, and of any knowledge of fraud and combination, and pray to be dismissed with their costs.

To this answer the general replication was filed.

The Superior Court thereupon proceeded to hear the cause, and then made and passed the following judgment and decree : " The Court do find, that said *Ely* " did purchase said tract of land, containing 150,000 " acres, of said *Pollard* and *Pickett*, as stated in said pe- " tition ; that the petitioners did severally furnish money " for said *Ely*, to pay it to him in the proportions, and " upon the terms, and under the agreements, set forth

X

1808.

POLLARD
v.
LYMAN.

" in said petition, and are interested in said land, in
" proportion severally to the sums of money by them ad-
" advanced as aforesaid.   And the Court do find, that
" said lands sold by the respondents to said *Ely*, were
" represented, and held out to said *Ely*, by the respond-
" ents, at the time of said purchase, as being of great
" value, in point of quality, and their relative situation
" with other lands in said County of Wythe, which said
" *Ely* had viewed, and which were valuable for settle-
" ments.   And the Court do find, that a plan or survey
" of said lands sold by the respondents to said *Ely*, im-
" porting the same to be of good quality and situation,
" was shewn to said *Ely*, by said *Pollard* and *Pickett*, at
" the time of said sale, as is set forth in said petition.
" And the Court do find, that the said plan or survey
" was not made by any actual survey ; and that the lines
" of said tract sold to said *Ely* as aforesaid, were never
" run out, nor surveyed ; and that the said plan or sur-
" vey imported, on the face of it, a falshood.   And the
" Court do find, that the lands sold by the respondents
" to said *Ely*, as set forth in said petition, were not, at
" the time of said sale, and are not, now, of any value
" whatever.   And the Court do find that the said three
" bonds, mentioned in said petition, were given by the
" petitioners, as the consideration of said purchase made
" by said *Ely* of the respondents ; and that two of said
" bonds have been paid ; and that a suit is now depen-
" ding, on the other bond, which hath not been paid, in
" the County Court of Hartford County, all as stated in
" said petition.   And the Court find, that as to any de-
" fect in the title, derived to the petitioners from said
" purchase of said *Pollard* and *Pickett*, the petitioners
" have adequate remedy at law, upon the covenants in
" said deed from said *Pollard* and *Pickett*, it appearing to
" the Court, that said *Pollard* and *Pickett* are able to res-

" pond any damages, that may be recovered of them, in
" any suit upon the covenants of said deed.

" Whereupon, it is ordered and decreed, by this
" Court, that said *Pollard* and *Pickett*, their counsel, and
" attornies, be perpetually enjoined from further procee-
" dings in said suit upon said bond, in said Hartford
" County Court, and from commencing and prosecuting
" any other suit upon said bond. And it is further de-
" creed and ordered by this Court, that upon the peti-
" tioners executing to said *Pollard* and *Pickett*, their
" heirs, &c. conformable to the laws of said State of Vir-
" ginia, releasing to said *Pollard* and *Pickett*, their heirs,
" &c. all the right and title to said lands purchased of
" said *Pollard* and *Pickett* as aforesaid, by said *Ely*, which
" the petitioners derived from said *Pollard* and *Pickett*,
" by virtue of said conveyance from them, as stated in
" said petition as aforesaid, and lodging the same with
" the clerk of this Court, on or before the 17th of Feb-
" ruary, 1803, to be by said clerk delivered to said *Pol-*
" *lard* and *Pickett*, upon their complying with this decree,
" they the said *Pollard* and *Pickett* shall, on or before the
" 1st of July, 1803, deliver up said bond, on which
" said suit is brought, to the clerk of this Court, to be
" cancelled, and shall pay to the clerk of this Court, for
" the use of the petitioners, the sum of $ 14,876 50,
" and interest thereon from this time till the same shall
" be paid ; and upon the failure of said *Pollard* and *Pick-*
" *ett* to comply with this decree, upon the condition, and
" by the time aforesaid, they shall forfeit and pay to the
" petitioners, the sum of $ 30,000, to be recovered of
" them, the said *Pollard* and *Pickett*, according to law.
" And it is further decreed by this Court, that the peti-
" tioners do recover of the said *Pollard* and *Pickett*
" their costs."

The respondents brought a writ of error to this Court, and assigned the general errors.

*Benson*, (of New-York) and *Daggett*, for the plaintiffs in error, contended,

1. That the Superior Court could not, by law, find the facts, which they declare found. The finding contains not only facts, which are not alleged in the petition, or confessed by the answer, but also such as are expressly denied by the answer. But the answer is conclusive upon the petitioners, and no evidence can be admitted to contradict it. To this point *Butler* v. *Catling*, (a) 1 *Root* 582, and 2 *Swift* 475, were cited.

2. That the facts, which appear found, do not warrant the decree. No *fraud* on the part of the respondents, or *science* that the representations made by them were *false*, though charged in the bill, is found by the Court. But that mere *falshoods* were held out to the petitioners, without any fraudulent intention in the respondents, and with no more knowledge of the thing contracted about, than the petitioners themselves had, is not sufficient to entitle them to relief. (b)

This was a bargain of *hazard*. The price was but *eleven cents an acre*, for lands in a settled county, through which the purchaser had lately travelled. It was evidently the intention of the parties to *speculate*.

That even this price, as events have shewn, is far above the value of the land, affords no ground of re-

(a) 1 *Root* 310.                  (b) 1 *Pow. Cont.* 141.

lief. Inadequacy of price may be *evidence* of *fraud*; but fraud will then be found. (*c*)

3. That the petitioners had adequate remedy at law. (*d*)

*Edwards*, (of New-Haven) and *Hosmer*, for the defendants in error.

BY THE COURT. The disclosure, which admitted none of the facts alleged as fraudulent, and denied them all, was conclusive with respect to those facts.

Chancery power to compel a disclosure, has, by the practice of this State, from the beginning, been limited to the case of there being no other evidence. To have extended it further would have been an unnecessary departure from the common law, and an unnecessary exposure to imminent danger of perjury. A plaintiff, therefore, to entitle himself to a discovery, avers in his bill, that the facts respecting which he prays a disclosure, rest solely in the knowledge of the defendant, or of the defendant and himself; and to permit him, after disclosure is obtained, to produce other evidence in proof of those facts, is to permit him to falsify himself, and to trifle with the Court, and the conscience of his adversary.

The Court having found that *Pollard* and *Pickett* were able to respond any damages, that might be recovered of them, in any suit upon the covenants of the deed, if they had been broken, the question of the title was laid out of the case.

(*c*) As to "*Unreasonableness*" vide 2 *Pow. Cont.* 143, 4, 5. "*Inadequacy*," 2 *Pow. Cont.* 152. "*Exorbitancy*," 2 *Pow. Cont.* 228.

(*d*) 2 *Root* 338. *Willet* v. *Overton.* 2 *Com.* 324. *Mi:.* 104, 5, 6. *Kirby* 135, *Lothrop* v. *Bennet.*

1803.

POLLARD
v.
LYMAN.

They further found, that the lands sold to *Ely* were, at the time of the purchase, *represented* and *held out* to him, by the respondents, as being of great value, in point of quality, and their relative situation with the lands in the County of Wythe, which he had viewed, and which were valuable for settlements. If " represented and held out, as being of great value," mean any thing more than the exhibition of the plan, which is included in the next finding ;—if it mean, that *Pollard* and *Pickett* affirmed the lands to be of a great value, or that they were located in the midst of a well settled country,—the affirmations alleged in the bill, and which the disclosure had denied,—the finding must have been without evidence, or upon evidence which was inadmissible, and inoperative.

The only defects, or misrepresentations of the plan, specifically charged in the bill, were, that it delineated many water-courses, well interspersed, and connected with rivers of extensive communication, some of which water-courses did not, in fact, exist, and others were misplaced ; and, that it represented the land to be of great value, when, in fact, it was of no value. That the plan represented the land to be of great value, otherwise than by a demarcation of water-courses, which might create a presumption of fertility, and of easy access, was not alleged. Nor does it appear, from the finding of the Court, that the demarcation of the water-courses, was, at all, incorrect ; the finding is silent with respect to them. And as to any facts found respecting the plan, which were not charged so specifically, that the adverse party had notice to contest them, it is not material what they amount to. It may be proper, however, to notice, that whatever misrepresentations the plan may have contained, it was not found, that *Ely* was

induced by it to purchase, nor that *Pollard* and *Pickett* knew it to be incorrect, or had any agency in making it, or procuring it to be made ; and, indeed, the reverse of all these facts is apparent from the disclosure, so that the allegation wholly fails.

The Court further, and finally, found, that the land was of no value.

Mere loss in a bargain,—loss resulting not from fraud, nor the failure of a warranty, but from bad calculation, or the want of vigilance, is not a ground for relief. It could not be admitted as a ground, without rendering all express contracts futile.

As to the doctrine of implied warranty, that the article sold is of the ordinary quality of articles of its kind, or equal throughout to the sample seen, it applies only to articles susceptible of a standard quality, or which are sold by samples, and does not extend to lands which have no standard quality, and must depend, for their value, on a variety of circumstances, none of which are reducible to a common measure. Nor does the doctrine of the failure of the consideration reach this case. It reaches no case, where the purchaser obtains the article contracted for, and the purchase was not induced by fraud, nor the quality of the article warranted. It is *not having* the stipulated consideration, and not its *want of value*, which the doctrine respects. In this case, it must be understood, as there is nothing either expressed or implied to the contrary, that the purchaser took upon himself the risque of the quality, or value, of the land, which he improvidently purchased unseen. And as to fraud, it does not appear, that the seller practised any address whatever : though it is not every species of ad-

dress that vitiates a contract. If the address be such only as the purchaser, by due diligence and circumspection, might guard himself against,—that is to say, such diligence and circumspection, as in the ordinary course of business usually accompany similar transactions, he is without remedy.

There not appearing, then, from the record, any sufficient ground to warrant the decree of the Superior Court, it is reversed.