## Markle *against* Hatfield.

NEW-YORK,
Nov. 1807.

Markle
v.
Hatfield.

THIS case came before the court on a *writ of error*, from the court of common pleas, of *Dutchess* county, founded upon a bill of exceptions.

The suit below was an action of *assumpsit*. The declaration contained a count for divers, cattle, sold and delivered to the defendant; and counts for money *paid*, &c. *lent*, &c. and for *money had and received, to the use of* the plaintiff, and an *insimul computassent*. Plea, *non-assumpsit*.

Upon the trial, the plaintiff below proved, that in *October*, 1805, he sold to the defendant, who was a butcher, a number of cattle, for 120 dollars, and that the defendant paid him the said sum in bank bills, which the plaintiff received in full payment. Among the bills so received, there was one for fifty dollars, of the *Boston* branch bank of the *United States*. The plaintiff, on, the same day on which he sold the cattle and received the bills in payment, paid the same note of 50 dollars to a third person; and soon afterwards it was discovered to be counterfeit, and was returned to the plaintiff. The same bill was produced, and proved to be counterfeit, upon the trial. No evidence was given that the defendant below knew the bill to be counterfeit, and he was proved to be an illiterate man. The counsel for the defendant, at the trial, insisted, that the plaintiff was not entitled to recover upon the proof; but the court charged the jury that the evidence was sufficient, and that the plaintiff was entitled to recover the fifty dollars, with interest, though there was no evidence of any fraud in the defendant, and the jury found accordingly. The bill of exceptions was taken to this opinion, and the charge of the court below.

M. sold and delivered to H. a number of cattle, and received payment in bank notes, which he afterwards paid away to C. who discovered one of the notes to be forged. Neither M. nor H. knew that the note was bad. In an action bro't by M. against H. on the original contract for cattle sold and delivered, it was held, that a forged note, or a bill which proves to be of no value, is no payment, and that the party may treat it as a nullity, and resort to the original contract.

[*]*Ruggles*, for the plaintiff in error. This may be regarded as a contract of sale, or exchange of cattle for bank notes. Bank notes are to be considered as any

[* 456]

NEW YORK,
Nov. 1○

Markle
v.
Hatfield.

* Seixas v.
Woods, 2
Caines, 48.
† 2 East, 314.
Doug. 18. 20.

‡ Doug. 654.
2 East, 448.
§ 3 Burrow,
1354.

¶ 1 Ld. Raym.
442. Fenn v.
Harrison, 3
Term, 759,

** 1 Esp. Cas.
106. 447.

†† 5 Co. 115.
Co. Lit. 208.
Shep. Touch.
140. 6 Bac.
Ab. 450. Ten-
der, B.

[* 457]

other property or goods, transferable by delivery. Un-less, therefore, there be an express warranty, or deceit, or fraud, in the transaction, the doctrine of *caveat emptor* will apply.* Where an article is sold or transferred, without warranty, and there be no fraud, it is considered, as it respects the parties, the same thing in fact as it was supposed to be at the time of delivery ;† and if it should turn out to be different, the vendee, or person receiving the article, can never recover back the price or value paid.‡ In *Price* v. *Neal*,§ it was held, that where a forged bill was excepted and paid, under a belief that it was a true one, that the acceptor, on discovering the forgery, afterwards, could not recover back the money. If the holder of a bill send it into the market, without indors-ing it, and it turns out, afterwards, to be of no value, he is not bound to refund the money for which he sold it, if he did not know that it was bad.¶ So where a person accepts a bill in payment, without an indorsement by the person from whom he receives it, he can never recover back the money, or resort to the original contract, in case the bill proves to be of no value.** The party, in such case, takes the bill at his own risk. He must take care that he gets good bills, or make his objection at the time, and insist on an indorsment, or warranty. So that bills received in payment without any objection, are consider-ed as cash. Again, counterfeit money, if accepted amounts to payment. In *Wade's* case,†† Lord *Coke* states a de-cision, that where a party to whom money was tendered, accepted it, and put it in his purse ; but, on examining it before he left the place, discovered some of it to be coun-terfeit, and refused to carry it away, it was held, that not having objected to it, before he had accepted it, it was a good performance of a condition, which was for the pay-ment of money. [*]In the present case, there was a com-plete acceptance, by the plaintiff, of the bank notes paid by the defendant, which were passed away by him to a third person.

*J. Tallmadge*, contra. The doctrine of *caveat emptor*, applies only in the sale of property where the party has it in his power to examine and ascertain the truth, and does not use due diligence to protect himself against mistake. It would be extremely hard to apply it in the present case, where the party could have no means of detecting the forgery. The defence set up is, that the defendant has paid for the cattle; to support which, he must show a payment in good money, or some equivalent satisfaction. In *Stedman* v. *Gooch*,* Lord *Kenyon* laid it down, as clear law, that if a bill or note, payable at a future day, and received in payment for a debt; be of no value, as if, for example, it be drawn on a person who has no effects of the drawer in his hands, and the drawee refuse payment, the holder may consider it as waste paper, and resort to his original demand. So, in *Puckford* v. *Maxwell*,† Lord *Kenyon* observed, "that in cases of this kind, if the bill given in payment do not turn out to be productive, it is not that which it purports to be, and which the party receiving it expects it to be, and he may, therefore, consider it as a nullity, and act as if no such bill had been given." In *Owenson* v. *Morse*,‡ it was decided, that unless the party agrees to receive the bills or notes as payment, and to run the risk of their being paid, the mere taking of them would not amount to a payment. And the defendant, who insists on the payment, must prove an agreement, by the plaintiff, to accept them as such, and take them at his own risk. The case of an acceptor of a bill, which turns out to be forged, was decided on the principle, that the acceptor impliedly undertakes to the person presenting the bill, and who is not presumed to know the hand-writing of the drawer, that the bill is a a true one, and the question is, in whom negligence, or the want of due caution, is to be presumed? The case of *Price* v. *Neal*, therefore, does not apply to the case now before the court. [*]As to the case of *Vane* v. *Studley*,

NEW YORK,
Nov. 1807.

Markle
v.
Hatfield.

* 1 Esp. Cas. 3. 5.

† 6 Term, 53.

‡ 7 Term, 64.

CASES IN THE SUPREME COURT

NEW-YORK,   cited from *Wade's* case, it may be observed, that it was a
Nov. 1807.   mere *dictum* of Lord *Coke*.   If intended as a general rule
Markle       of law, it is against every principle of justice and com-
v.           mon sense.   But the only question was, whether there
Hatfield.    had been a sufficient tender to prevent a forfeiture of the
             lease; and the court, with a view to prevent a forfeiture,
             might be disposed to consider such a tender as sufficient.
             Will a court of justice sanction the doctrine attempted
             to be derived from this *dictum*, that where one person
             promises to pay another gold, and tenders him brass,
             which the other accepts, supposing it to be gold, that it
             shall be a good payment?   But if bank notes are consi-
             dered as money, all the cases about sales of property,
             which have been cited, will be found totally inapplica-
* 1 *Bur.* 452,  ble, and the plaintiff must recover.   In *Miller* v. *Race*,*
3 *Term*, 554.   Lord *Mansfield* declared, that bank notes were not goods,
*Chitty on*
*Bills*, 2 ed.   nor securities, nor documents, for debts, nor were they
241.         so esteemed; but were treated as money and cash, in
             the ordinary course of business, by the general consent of
             mankind.   He considered bank notes as much money as
             guineas, or the current coin, and, as used in payments,
             as cash.   They are undoubtedly, the circulating medium
             of the country, and it would be extremely inconvenient,
             impolitic and oppressive, to consider them as goods, or
             to apply to them a *dictum*, found only in the very ancient
             report of Lord *Coke*, and which is recognised by no mo-
             dern writer.

             *Ruggles*, in reply, insisted, that there was no difference
             between receiving a bank note which proves to be bad,
             and any other property which turns out to be of no value.
             Bank notes, he contended, could not be considered in all
             respects as money; they were not a legal tender in dis-
‡ 2 *Bos.* &   charge of a debt,‡ for the party may refuse to receive
*Pul.* 526.   them, and insist upon cash, or the current coin.   In the
             case of *Owenson* v. *Morse*, he observed, the goods sold
             were not delivered, nor the contract executed as in the
             present case.

KENT, Ch. J.    The justice of this case is clearly with the defendant in error.    He parted with his goods to the plaintiff, without receiving the compensation which was intended.    It would be matter of regret, if the law obliged us to regard a payment in counterfeit, instead of genuine bank bills, as a valid payment of a debt, merely because the creditor did not perceive and detect the false bills, at the time of payment.    The reasonable doctrine, and one which undoubtedly agrees with the common sense of mankind, is laid down by *Paulus* in the *Digest;* and has been incorporated into the *French* law.    He says, that if a creditor receive by mistake any thing in payment, different from what is due, and upon the supposition that it was the thing actually due, as if he receives brass instead of gold, the debtor is not discharged, and the creditor, upon offering to return that which he received, may demand that which is due by the contract.    *Si quum aurum tibi promisissem, tibi ignoranti quasi aurum æs solverim, non iberabor.* (*Dig.* 46. 3. 50.    *Pothier, Traité des Obligationes, No.* 495.)

But there are some ancient *dicta* in the *English* law, which advance a contrary doctrine, in respect to gold and silver coin.    It is said, that the creditor must at his peril count and examine the money at the time he receives it.    Bank bills are not money, in the strictly legal and technical sense of the term, but as they circulate, and are received as money, in the ordinary transactions of business, it becomes material to examine into the authority and solidity of these positions in the books.    In *Shepherd's Touchstone*, (p. 140.) it is laid down, and with a reference to the *Terms de Ley*, that if a payment be made partly with counterfeit coin, and the party accept it, and put it up, it is a good payment. *Shepherd's Touchstone* is supposed to be the work of Mr. Justice *Doderidge*, and as such, it has always been considered as a book of authority; but it loses some of its character for accuracy, when we

NEW-YORK
Nov. 1807.

Markle

Hatfield.

NEW-YORK,
Nov. 1807.

Markle
v.
Hatfield.

[* 460]

* The rule in
the Touch-
stone, seems
also laid down
in relation to
what may be
a good per-
formance of
a condition.

consider it as a posthumous and surreptitious publication. The book to which it refers, gives no increased weight to the *dictum.* [*] The same doctrine is contained in *Wade's* case; (5 *Co.* 114.) but it is supported only on the authority of the case of *Vane* v. *Studley,* which is there cited, in which it is said to have been adjudged, that where the lessor demanded rent of his lessee, according to the condition of re-entry, and the lessee paid the rent to the lessor, who received it and put it into his purse, and afterwards discovering a counterfeit piece among the money, he refused to carry it away, and re-entered for the condition broken, the re-entry was held not to be lawful, because he accepted the money at his peril. This case of *Vane* v. *Studley* is cited cautiously, and stated, *as said* to have been so adjudged. With regard to *Wade's* case itself, it did not require the aid of any such decision, because no such question arose in that case, and it was adopted by Lord *Coke* merely in illustration of his opinion. Perhaps, the question arising upon the forfeiture of the condition, might have induced the judges the more readily to adopt the rule, though in *Shepherd* the rule is laid down as general, and without any special application.* These loose *dicta,* and this doubtful case of *Vane* v. *Studley,* are then, as far as I have been able to discover, all the authority which we have for this ancient doctrine; and it is to be remarked, that we find no subsequent sanction of it, through all the accumulated decisions in the *English* law. On the contrary, the modern decisions are founded on different principles. They apply another and juster rule to cases of payment in negotiable paper. These cases are so very analagous to the one before us, that it would be very difficult to raise a distinction.

In *Stedman* v. *Gooch,* (1 *Esp. Cases,* 3.) the plaintiff took in payment, for goods sold to the defendant, three promissory notes of one *Finlay,* payable at the house of

one *Brown*, and gave the defendant a receipt to that effect. It appeared that *Finlay* had no effects in the hands of *Brown*, and the plaintiff sued upon the original demand, before the notes were payable. Lord *Kenyon* held, and his opinion was afterwards concurred in, by the other judges of the king's bench, that if such a bill or note was of no value, the creditor might consider it as waste paper, and resort to his original demand. If the plaintiff in that case was not bound by the acceptance of the promissory note of *Finlay*, because it proved afterwards to be of no value, why should the defendant, in the present case, be bound by the acceptance of a pretended promissory note from the *Boston Branch Bank*, when the note proves, afterwards, to be counterfeit? Whether it be the promissory note of an individual, or of a corporation, can make no difference. The creditor, in both cases, is presumed to have been ignorant of the want of value in the note. He cannot be chargeable with negligence, in not detecting, in the first instance, the want of value, because, the means of ascertaining whether the note was or was not of value, may be, and probably were, equally in both cases, absent from the party. The like doctrine was advanced in the case of *Owenson* v. *Morse*, 7 *Term*, 64.) and it has been adopted and applied to a similar transaction of payment, in a negotiable note, in the case of *Roget* v. *Merritt* and *Clapp*, decided in this court, (2 *Caines*, 117.)

The negotiable note of a third person, and a bank note, are equally promissory notes, for the payment of money; and if the receiver may be presumed in one case, and not in the other, to have taken upon him the risk of the solvency of the drawer, there is no presumption in either case, that he assumes upon himself the risk of forgery.—— In the case of *Goldsmiths'* notes, which formerly were accounted as ready cash, lord Ch. J. *Holt* did, indeed, once say, (*Tassel* v. *Lewis*, 1 Lord *Raym.*743.) that the receiver gave credit to the goldsmith, and took them at his peril;

NEW-YORK,
Nov. 1807.

Markle
v.
Hatfield.

[* 462]

NEW-YORK, but this doctrine has since been exploded by repeated
Nov. 1807.
            decisions. (*Str.* 415. 508. 1248.)   Even were we to ad-
Patcher      mit, (which I do not,) that there might be some difficulty
v.
Sprague,    in surmounting the opinion of lord *Coke,* as to gold and
            silver coins, yet, as to bank bills and other promissory
            notes, we must conclude, upon the strength of authority,
[* 462]     as[*] well as upon the reason and justice of the case, that
            the charge of the court below was correct, and that the
            judgment ought to be affirmed.

I have not thought it requisite to pay much attention
to the case of *Price* v. *Neale,* (3 *Burrow,* 1354.) which was
cited in the argument, because, I consider that case as
decided upon principles which have no application to the
case before us.   It was there held, to be incumbent upon
the acceptor of a forged bill of exchange, to satisfy him-
self of the genuineness of the drawer's hand, before he
accepts and pays it, as he must be presumed to know his
correspondent's hand; and that it was not incumbent up-
on the defendant to inquire into that fact.   That decision,
therefore, turned upon the negligence imputable to the
one party, and not to the other.   No such imputation ari-
ses in the present case.   The acceptance of a bill, and
the indorsement of a note give a credit to the paper, which,
upon commercial principles, the party is not afterwards
at liberty to recall.

                    Judgment affirmed.