Overton, j.
now delivered his opinion to the following effect:
The history of the assignment of unnegotiable paper, has been given with much correctness and perspicuity, by Buller, j. in 4 T. Rep. 340. By the common law ordinary bonds or obligations, were not assignable;(a) but for a valuable consideration they were sustained in equity at all times,2 Woodes. 388.. The case in 4 T. R. 340. together with many others to be found in the late reporters, shew clearly, that in modern times, the courts in England are approaching to the good sense of the rule long since established *439 in equity. They consider the assignee as having an interest in the demand, and will not, where a suit is pending in court for the use of such person, permit the assignor to intermeddle with it, or in any manner to extinguish the demand. (a) So far have they gone in the common law courts in England, in relaxing the original principles, but no further. After this decision, the legislature of that country had as well have gone the whole length of authorizing the transfer, or sale of such choses in action, in the same manner that the common law, in common with those of every other nation, recognizes the sale of any other property. The reasons given by law-writers, why choses in action were not allowed to be assigned, were, that it encouraged litigation, by claims of this kind getting into the hands of others, of a more litigious disposition, and of greater weight and influence in society, “whereby (saith Lord Coke) justice might be trodden down.” A very unsatisfactory reason indeed, in any country, but perfectly unintelligible in one of equal laws and liberty. The opinion of the court of chancery, with the present practice in the other English courts, demonstrate, that if ever there was any reason for the rule, it has ceased as it respects personal demands.
Our act of 1801, c. 6, s. 54, has expressly said what is implied from the adjudication of the English judges, that it is lawful to sell or transfer common choses in action. “Suits (says the act) may hereafter be brought both in courts of law and equity, in the names of assignees of bonds, with collateral conditions, bills or notes for specific articles, or the performance of any duty.
Agreeably to the common law, an assignee acquired no kind of interest—he was forbidden to acquire such interest. Therefore, the assignment did not operate any thing, it were the same thing as if a blank stood in its place. When courts of equity recognized assignments for valuable consideration, it was cautiously done; they did not proceed on principles analogous to those governing bills of exchange, and other negotiable choses in action. In these transactions the assignor is liable for the amount of the bill, if not to be had of the drawee. They *440 decided, that the assignee took an unnegotiable paper subject to every equity and objection that might be sustained against it, in the hands of the obligee.(a)—This principle is not affected by our act, which only authorises an assignee to maintain an action in his own name. The act legalizes the acquisition by the assignee, and there it stops.
This being the state of things, we will proceed to examine the general principles to he found in the books respecting the action for money had and received, and see whether any of those principles cover the case before the court.
The science of law is much indebted to the distinguished talents of Lord Mansfield, for having brought this useful form of redress to perfection.-Let us review the priciples established by that great man, and other judges. His principles in this respect, were principally derived from the Roman law; and there certainly is a striking likeness between the civil and our law, respecting these actions. That law, when speaking of actions quasi ex contractu, under the division of innominate contracts, has a kind of action termed actio in fractum, or in prescriptis verbis answering to our action on the case. Under this class they had their condictio indebiti, or to recover back money paid by mistake, and condictio causa data nonsecure, or to recover back money on account of the failure in the consideration. The cases of quasi contracts, rested upon the same ground with implied assumpsits. The principles of the two laws were in some respects different. Lord Mansfield's great predilection for the Roman law, it is believed carried him too far upon the main ground in the case of Moses vs. M'Farlin, 2 Burr. 1005.(a) One question in that case, was, whether the action could be maintained, the action having previously been sub judice,, and money paid under the authority of a court of competent jurisdiction. The opinion of the judge was, that notwithstanding this objection, an action for money had and received, might be supported. Though the general principles and reasoning of Lord Mansfield in that case, were characteristic of a great and comprehensive raind, we cannot agree with him. Upon the principle, that it had been previo *441 usly litigated, the action ought not to have been sustained. This seems to be the decided opinion of Lord Kenyon.(a) The reasoning of Lord Mansfield in other respects, is a great present to the profession. The ideas he entertained respecting this action were, that it lies wherever ex equo et beno, the defendant ought to refund, and where consistent with equity and conscience, he cannot retain the money in his hands.(b) In 2 T. Rep. 370, Buller says, that a person cannot recover in this action, unless the case would be thought equitable, and so determined, if it were before a court of equity.—Hence Lord Mansfield in Burr. 1005, Cowp. 197, as well as judge Buller, compare it to a bill in equity.
From Lord Holt’s time, we find the judges frequently stating that these actions had been extended of late years. In the case of Holms vs. Hall,(c)Holt complains of these extensions,and observes,that "no body would more willingly check them than I would." I am far from agreeing with Lord Holt, for it would seem that the extension of this action, has contributed to expedite justice. It is concise, unperplexed with verbose pleading, and has almost rendered bills in equity unnecessary.
Useful as this form of action is, it should not be forgotten, that the courts will never suffer the general terms in which it is conceived, to produce surprise on the opposite party,(a) nor allow of the action in case of a special warranty of goods,(b), or a special contract is still open.(c)
In the case of Moses vs. M‘Farlane,(d) Lord Mansfield says, "that the extending of the action for money had and received, depends on the notion of fraud; as if one man takes another’s money to do a thing, and refuses to do it, it is a fraud, and he may sue upon the agreement, or may disaffirm it ab initio by reason of fraud, and bring an action for money had and received. This in general is correct, but the decisions have gone further, and approach nearer to the civil law. The decisions seem to rest on one or the other of two principles, fraud or implied warranty.
From the opinion entertained in the case of Moses vs. M‘Farlin, it will easily be perceived that the not *442 ion of fraud. forms the ground of most of these kind of condictious actions.
Those referrable to this head, are-
1st. To recover money paid by mistake, as in Skin. 411, 412, pl. 7. 1 Salk. 22, pl. 2. It is fraudulent to retain money thus erroneously paid. But it must be a mistake as to fact, and not law.(1)
2d. To recover money paid under a void authority, or upon an agreement declared void for irregularity by the legislature, or by them declared void, being against public policy, as in 1 Vin. Ab. 268, pl. 5. 1 T. Rep. 732; having been paid under a wrong impression, it is fraudulent to retain.
3d. When a defendant gets money into his hands, which ought in equity to belong to the plaintiff, without having had any kind of contract with him, and which it were fraudulent in him to retain, as in 2 Lord Ray. 1007. Buller’s N. P. 130. 1 T. Rep. 403, 387. Cowp. 419, 197. Burr. 1005. Bay’s Rep. 56.(a)
4th. Where money has been paid by compulsion, or constraint, as in Str. 915. 4 T. Rep. 485, it is a fraud to retain it.
5th. In cases of fraud apparent in the original transaction, as in Skin. 411, 412. 1 Vin. Ab. 268, pl. 4. 1 Salk. 22. 11 Mod. 146, 147. Cowp. 805. 4 T. Rep. 182. 1 H. B. 665; or for money got through imposition, extortion, oppression, or undue advantage taken of the plaintiffs situation. Here again is fraud, 1 T. Rep. 286.
6th. Where the consideration has failed as for earnest, when the bargain has fallen through on account of a bargainor’s refusal, &c. Premiums where a ship did not sail on her voyage, &c. 6 Mod. 161.—Burr. 1005. In all these cases it is fraudulent to retain the consideration, and thus, in the language of Lord Mansfield, the notion of fraud was at the bottom.
We will now notice cases in which this action was repelled. It seems to be a general principle pervading all the cases, that it lies only where the principles of just ice require it, and not then, if opposed by public policy.
In relation to the first, or where justice did not *443 require it, because both parties acted with a full knowledge of all the facts and circumstances, and the consideration happened to fail, it was determined this action would not lie, 1 Esp. Ca. 279. 4 T. Rep. 561. 1 T. Rep. 225. This rule equally holds where the plaintiff and defendant are equally innocent, or equally guilty. If the contract be illegal, and the parties be equally guilty, no action can be maintained, (a) Cases where the parties have been equally innocent, may be found, as in 1 New. Rep. 260. The defendant had obtained a patent for an invention, supposing himself to be the first inventor, he sells to the plaintiff for the term of 14 years, who enjoys the benefit of it five years, when it is repealed at the instance of another person, who had previously invented it. This action was brought for the consideration paid, on account of the failure in the same. The court conceived the action did not lie, as both parties supposed the patent was good; as there was no fraud nor deception, and as the plaintiff had enjoyed it part of the time. On the part of the plaintiff it was insisted, that as the defendant was not the inventor, he never had a right to the invention, and therefore ought to refund. This decision is conformable to the principle, that the plaintiff in ordinary cases, can only recover, where the defendant cannot conscientiously retain; and conformable to the observations of Lord Mansfield, in Neal vs. Price, Burr. 1354; his words are, “In this action the plaintiff cannot recover the money, unless it be against conscience in the defendant to retain if, and great liberality is always allowed in this sort of action;” and farther, “it was a misfortune that had happened without fault or neglect. If there were no neglect in the plaintiff, yet there was no reason to throw off the loss from one innocent man upon another innocent man.” Between two innocent men, a court of law or equity will always be neutral, unless the law raises an obligation,[a]
In the case before the court, fraud is not suggested on the part of the defendant, it is proved there was none, Poth parties are equally innocent, as in the case above of a patent. 1 New. Rep. 260. In the case before the court, the warrant turned out to *444 be worth nothing, but neither party knew that when it was sold, and one had as good an opportunity of knowing it as the other. It was also proved, that the defendant purchased the warrant of Lytle, so that it is clear, unless some other ingredient exist in this case, than fraud, the plaintiff cannot recover. The case of Gates vs. Winslow, 1 Mass. T. Rep. 65, if made to apply to personal contracts, has narrowed the responsibility of vendors, contrary to the late decisions in England, as will be seen presently. The case was, that the defendant had sold land to thé plaintiff, for which he made a quit claim deed, the title proved defective, and this action was brought to recover back the consideration paid. The court said, that “where the parties were equally guilty, or equally innocent, melior est conditio defendentis, as no fraud nor imposition is pretended to have been practised by the defendant, the court will presume that the parties at the time of the transaction, were on equal grounds. Any one who had voluntarily given away a sum of money, might as well think of recovering it back, as the plaintiff expect to maintain the present action,” and so says the book, where money has been paid voluntarily and understandingly, without fraud, imposition of deceit, although it were paid without consideration, the law will not compel a payment, but leaves the parties as it finds them.
Hardin, 102 2 Wash.119 1 Bro. C. C. 301. 1 Caine's C. E. 119. 1 John. 548, 565, of two equities, the rule is qui prior, est in tempore, potior est injure, 2 Wash. 237. 3 Atk. 93.
Strong, j. said, "that a person who had purchased a lottery ticket, which happened to come up a blank, might with equal propriety say, that the contract was nudum pactum, and bring his action to recover back the price of the ticket.”
The reasoing of this case is correct, if understood with relation to sales of reed property, where there is no such thing as implied responsibility, or quasi contracts, as in the civil law.
By the law of England, which is believed to be our law in this respect, there is a settled and uniform distinction between the sales of real and personal property. In the first, a man is never liable in solemn contracts, but by express agreement, except a few cases of implied warranty—in exchange and *445 partition excepted.(a) In the other, he is often impliedly so.(b) The reasoning in the case of Gates vs. Winslow, must be referred to the class of cases respecting real property, as in Bree vs. Holbeck—Doug. 655.
The implied agreement in Gates vs. Winslow, was clearly, that the defendant should not be answerable, and no action can be sustained for money had and received, contrary to the express or implied agreement of the parties.(c)
In the cases hitherto reviewed, nor in the principles contained in them, have we been able to discover any which would authorize a recovery in this action. All the cases prove, that it is not the mere circumstance of the consideration failing, that will entitle the plaintiff to recover; another important ingredient is necessary, that the defendant cannot retain the money consistently with equity and good conscience. Can the defendant do so in the principal case 1 without some principle of positive law he certainly can. He having purchased the warrant, sold it again fairly, without fraud, concealment or misrepresentation; the defendant having as complete an opportunity of knowing every thing respecting it, as the plaintiff had. Both parties equally knew, that it was to be laid before the board for adjudication, when it might be condemned or not.
Is there then, any principle in the law, which will enable the plaintiff to obtain a recovery? It seems to me that there is. The principle alluded to, is laid down by Holt, Ch. J. in the case of Medina vs. Stoughton, 1 Salk. 210. 1 Ld. Ray. 593. Referred to in Carthew 90. 3 T. Rep. 57. Pasley vs. Freeman. "Where the seller has the possession of goods, the bare affirming them to be his, makes a warranty.(d)
The remark of Mr. Justice Buller, in the case of Pasley vs. Freeman, that this rule more strongly applies where the seller is out of possession, does not come into view in the principal case. But such implied warranty does not extend to the quality of the thing sold, and to charge a defendant on this ground, he must know of a defect not known to the plaintiff, and which he could not know by the exertion of com *446 mon prudence*—and upon this principle it would seem, if goods should turn out to be the property of another, of which the seller was ignorant, it shall be no excuse—be will be liable.(b) Property pay be in action as well as possession; if a person sells a covenant or bond, affirming it to be his own, the ease of Medina vs. Stoughton applies; he virtually warrants that it is so. Lord Holt is here speaking of property in possession—the same principle applies to that in action, where the law allows of its transferrence. The plain sense of the principle is, that the buyer should get something; that it should be in reality what if is said to be, which would be, as respects transferrible causes in action, a warranty, that the bond or obligation evidenced at the time of its sale, a subsisting demand, as in the case of a forged bank bill.(c) “The sale of a subject as existing, which does not exist, is void $ the vendor cannot deliver a non eras and the purchaser is not bound to pay the price, unless he gets what he bargained for.(1) These observations are applicable to the case of the assignment of a covenant from one man to another, and it is conceived that the assignee, standing in the shoes of the assignor* is subject to all the Objections which, could excuse the performance of the covenant, if in the hands of the obligee; (2) yet upon the sale, an implied warranty will fender the seller liable, if the covenant be avoided or rendered of no effect, for, or on the ground of any objections attached to the original transaction, op. existing respecting the covenant, previously to the sale; but the seller would not be liable fop any subsequent events, rendering the covenant fruitless.(3) Such events, the obligee, had he retained and opt sold the obligation, would have been subject to; and such events the vendee would have as good a chance knowing, as the vendor(4) The buyer purchases nothing but the right, and assumes the risk of solvency of the obligee.
It is admitted, that there exists no difference between the case of an assignment of a warrant, and a comman unnegotiable bond.
Our next view is, the proceeding of the board of commissioners,in declaring the warrant or obligation *447 The state of Tennessee, by n cession from North-Carolina, 1804, c. 14. acquired the right of perfecting titles oh bona fide land claims. In order therefore, to ascertain these bona fide land claims, the board was established—the board were authorised to distinguish those that were bona fide, and fairly obtained from the state, from those that were that, and upon that ground to decide on them, ask declare them valid or invalid, 1806, c. 1, s. 29, 46—1807, c. 2, s. 1, 13. A warrant thus declared void, on account of fraud practised. On the state when obtained makes it so ab initio.* It would be void in the hands of the assignee, who purchased it subject to the game objections it Would have been in the hands of the assignor oh account of fraud, the warrant was in fact void when sold, though not declared so till afterwards; and thus it results, that the buyer in fact, did not get any thing for bis money when he parted With it. The consideration having failed upon the principle of implied warranty, he ought to recover it back in this action. The circumstance of
Lytle’s having assiged the warrant instead Of the defendant, who really was the seller, produces so difference in this ease. The assignment creates no kind of liability in the eye of the law; it is the receipt of the consideration, that generates a quasi contract.
I am not unmindful, that it is a principle of law and public policy, that law-suits should not be multiplied in any event, further than the dictates of justice would require | nay, public utility sometimes bars relief, when moral justice requires it—Kaim’s Pr. Eq. 404 to 410; but the same author says, “it is a great object in society, to rectify the disorders of chance, and preserve to every man as much as possible, the fruits of his own industry.”
Humphreys, j.
When the question was argued at the last term, I had no doubt that the plaintiff ought to recover, but as judge Overton wished to advise, it stood over.
Upon the sale of such a paper, the buyer takes upon himself the risk of solvency, but no further.—Other circumstances respecting an unnegotiable pa *448 per, must be supposed to rest in the knowledge of the obligee or seller. At all events, the buyer is not presumed to know any thing of such circumstances.
Let the rule be discharged.

 Co. Lit. 214, a.

 See 1 John. C. 411 3 John. 425. 1 Mass. 117. 1 T. R. 619. 1 Bos. and Pal. 447.

 2 Ver. 428, 692, 765. 1 Eq. C. 41. pl. 3, 4, 5. P. W. 383. 452, 459. Dall. 28. 444. 1 Johm. C. 553. 1 Vez. jr. 249. Wash. 299. 389. 1 Bay 211, 246.

 See Letters of Janius, Nos. 41, 61.

 7 T. R. 269.

 Burr. 1005. Cowp 197.

 6 Mod. 161.

 Doug. 137. Cowp 414, 807. Camp. R. 682, 293. 2 Mass. 398. 2 Wash. 179

 Cowp. 818.

 Doug. 23. 1 T. R. 133

 Burr. 1011.

 2 East. 469. Contra Bl. Rep.824. Evans' Essays, 7.

 See also 2 Binney, 382. 2Bay. 80.

 Bl. Rep. 1073; 1 H.Bl. 65. Skin. 412. Doug 468. 3 T. R. 266.

 This is consonant to equitable principle, Wythe 113. 4 Cr. 177.

 4 Rep. 121, b. Co. Lit. 173, b. 384, a. Litt. a 263. 1 Day. 156. Cro. J. 197.Sugd. 315.

 2 Dall. 91. Hardin 531. 4 Mass. 502.

 See 6 Mod. 161. Str. 107.

 6 John. 5. 2 Dall. 91. Hardin, 591,acc

 See 2 Dall 91. Hardin's Rep. 531. 1 John 517. 4 John 421. 4 Mass Rep. 502. Cro. J. 4. 2 East. 314. 572. Peake N. P. 123. 1 John. 274.

 Peake’s C. N. P.94.6 T. R. 606. Kaim’s Pr. Eq. 222. 6 John. 5.

 2 John. 455

[1] Kaim’s Pr. Eq. 221. Pothier on Ob. 495.

[2] 1 Hay. 369, 371. 1 P. W. 497. 2 Wash. 248, 253. 2 Ver. 692, 765. 1 Vez. 123. 1 Bay 211

[3] Hardin 20. Butsee 1 Bay. 398.

[4]See Add Rep. 56. Pennington's Rep. 23.

 See 6 John 110. 7 John. 324.