said, "that a person who had purchased a lottery ticket, which happened to come up a blank, might with equal propriety say that the contract was nudum pactum, and bring his action to recover back the price of the ticket."
The reasoning of this case is correct, if understood with relation to sales of real property, where there is no such thing as implied responsibility, or quasi contracts, as in the civil law.
By the law of England, which is believed to be our law in this respect, there is a settled and uniform distinction between the sales of real and personal property. In the first, a man is never liable in solemn contracts, but by express agreement, except a few cases of implied warranty. — in exchange and *Page 445 
partition excepted.[1] In the other, he is often impliedly so.[2]
The reasoning in the case of Gates v. Winslow must be referred to the class of cases respecting real property, as in Bree v. Holbeck; Doug. 655.
The implied agreement in Gates v. Winslow was clearly that the defendant should not be answerable, and no action can be sustained for money had and received contrary to the express or implied agreement of the parties.[3]
In the cases hitherto reviewed, nor in the principles contained in them, have we been able to discover any which would authorize a recovery in this action. All the cases prove that it is not the mere circumstance of the consideration failing that will entitle the plaintiff to recover; another, important ingredient is necessary, that the defendant cannot retain the money consistently with equity and good conscience. Can the defendant do so in the principal case? Without some principle of positive law he certainly can. He having purchased the warrant, sold it again fairly without fraud, concealment, or misrepresentation; the defendant having as complete an opportunity of knowing every thing respecting it as the plaintiff had. Both parties equally knew that it was to be laid before the board for adjudication, when it might be condemned or not.
Is there then any principle in the law which will enable the plaintiff to obtain a recovery? It seems to me that there is. The principle alluded to is laid down by Holt, C. J., in the case of Medina v. Stoughton, 1 Salk. 210; 1 Ld. Ray. 593. Referred to in Carthew, 90; 3 Term Rep. 57; Pasley v. Freeman. "Where the seller has the possession of goods the bare affirming them to be his makes a warranty."[4]
The remark of Mr. Justice Buller, in the case of Pasley v. Freeman, that this rule more strongly applies where the seller is out of possession, does not come into view in the principal case. But such implied warranty does not extend to the quality of the thing sold, and, to charge a defendant on this ground, he must know of a defect not known to the plaintiff, and which he could not know by the exertion of *Page 446 
common prudence,[5] — and upon this principle it would seem if goods should turn out to be the property of another, of which the seller was ignorant, it shall be no excuse, he will be liable.[1] Property may be in action as well as possession if a person soils a covenant or bond, affirming it to be his own, the case of Medina v. Stoughton applies; he virtually warrants that it is so. Lord Holt. is here speaking of property in possession, — the same principle applies to that in action, where the law allows of its transferrence. The plain sense of the principle is that the buyer should get something; that it should be in reality what it is said to be, which would be, as respects transferable choses in action, a warranty, that the bond or obligation evidenced at the time of its sale, a bonâ fide
subsisting demand, as in the case of a forged bank-bill.[2] "The sale of a subject as existing, which does not exist, is void; the vendor cannot deliver a non ens, and the purchaser is not bound to pay the price unless he gets what he bargained for.[3] These observations are applicable to the common case of the assignment of a covenant from one man to another, and it is conceived that the assignee, standing in the shoes of the assignor, is subject to all the objections which could excuse the performance of the covenant, if in the hands of the obligee;[4] yet upon the sale an implied warranty will render the seller liable if the covenant be avoided or rendered of no effect, for, or on the ground of any objections attached to the original transaction, or existing respecting the covenant previously to the sale; but the seller would not be liable, for any subsequent events rendering the covenant fruitless.[5] Such events the obligee, had ho retained and not sold the obligation, would have been subject to; and such events the vendee would have as good a chance of knowing as the vendor.[6] The buyer purchases nothing but the right, and assumes the risk of solvency of the obligee.
It is admitted that there exists no difference between the case of an assignment of a warrant and a common unnegotiable bond.
Our next view is the proceeding pf the board of commissioners, in declaring the warrant or obligation *Page 447 
invalid. The State of Tennessee, by a cession from North Carolina, 1804, c. 14, acquired the right of perfecting titles on bonâ fide land claims. In order, therefore, to ascertain these bonâ fide land claims, the board was established, — the board were authorized to distinguish those that were bonâ fide, and fairly obtained from the State, from those that were not, and upon that ground to decide on them, and declare them valid or invalid. 1806, c. 1, §§ 29, 46; 1807, c. 2, §§ 1, 13. A warrant thus declared void on account of fraud practised on the State when obtained, makes it so ab initio.[7]
It would be void in the hands of the assignee, who purchased it subject to the same objections it would have been in the hands of the assignor; on account of fraud, the warrant was in fact void when sold, though not declared so till afterwards; and thus it results that the buyer in fact did not get any thing for his money when he parted with it. The consideration having failed upon the principle of implied warranty, he ought to recover it back in this action. The circumstance of Lytle's having assigned the warrant instead of the defendant, who really was the seller, produces no difference in this case. The assignment creates no kind of liability in the eye of the law; it is the receipt of the consideration, that generates a quasi contract.
I am not unmindful that it is a principle of law and public policy that lawsuits should not be multiplied in any event further than the dictates of justice would require; nay, public utility sometimes bars relief when moral justice requires it, Kaim's Pr. Eq. 404-410; but the same author says, "It is a great object in society to rectify the disorders of chance, and preserve to every man as much as possible the fruits of his own industry."
[1] 4 Rep. 121 b; Co. Lit. 173 b. 384 a; Litt. § 263; 1 Day, 156; Cro. J. 197; Sugd. 315.
[2] 2 Call. 91; Hardin, 531; 4 Mass. 502.
[3] See 6 Mod. 161; Str. 107.
[4] 6 Johns. 5; 2 Dall. 91; Hardin, 591, acc.
[5] See 2 Dall. 91; Hardin, 531; 1 Johns. 517; 4 Johns. 421;4 Mass. 502; Cro. J. 4; 2 East, 314, 572; Peake, N. P. 123; 1 Johns. 274.
[1] Peake's C. N. P. 94; 6 Term Rep. 606; Kaim's Pr. Eq. 222; 6 Johns. 5.
[2] 2 Johns. 455.
[3] Kaim's Pr. Eq. 221; Pothier on Ob. 495.
[4] 1 Hay. 369, 371; 1 P. W. 497; 2 Wash. 248, 253; 2 Ver. 692, 765; 1 Ves 123; 1 Bay, 211.
[5] Hardin, 20; But see 1 Bay, 398.
[6] See Add. 56; Pennington, 23.
[7] See 6 Johns. 110; 7 Johns. 324.