JAMES WILSON, administrator of Samuel Wilson, plaintiff in error, *v.* DAVID C. ALEXANDER, defendant in error.

*Error to Tazewell.*

Where a forged note is paid by the administrator of the person whose name appears to the note, in ignorance of the forgery, he may, on discovering that the note is not genuine, recover back the amount paid.

THIS cause was heard in the Court below, at the September term, 1841, before the Hon. Samuel H. Treat and a jury.

A. LINCOLN, for the plaintiff in error, cited Markle *v.* Hatfield, 2 Johns. 455; Young *v.* Adams, 6 Mass. 182; Jones *v.* Ryde, 5 Taunt. 488.

J. B. THOMAS, for the defendant in error.

TREAT, Justice, delivered the opinion of the Court:

James Wilson, as the administrator of Samuel Wilson, brought an action of *assumpsit* against Alexander, in the Tazewell Circuit Court. The declaration contains a count on a note made by Alexander to the plaintiff's intestate, and the common money counts.

The defendant pleaded *non assumpsit* and payment. On the trial before a jury, it was proved that the plaintiff held a note on the defendant, made to the plaintiff's intestate; that the defendant paid the plaintiff the amount of the note, and took it up, passing to him in part payment, a note for $150, purporting to be executed by the intestate, payable to Isaac Krieder, by him assigned to Joseph Allen, and by Allen assigned to the defendant. It was further shown, that the note was a forgery; but it was admitted by the parties, that the defendant, at the time of the transfer, had no knowledge that it was forged. At the instance of the defendant's counsel, the Court instructed the jury, that unless they believed, from the evidence, that the defendant knew the note to be a forgery, at the time he passed it to the plaintiff, they were to find for the defendant. The jury found for the defendant, and judgment was rendered accordingly. The plaintiff having excepted to the instruction, brings the case to this Court, and assigns this decision of the Court, as cause for reversing the judgment.

The instruction given in the Court below, was founded on the authority of the case of Levy *v.* The Bank of the United States, reported in 1 Binney 27; and 4 Dallas 234. In that case, Levy received, in the course of business, a check drawn on the bank, and presenting it for payment, was credited with the amount. The check was afterwards discovered to be a forgery, and the bank refusing to pay the amount thus credited to Levy, he brought suit and recovered; the Court placing his right to recover, principally on the ground that it was a duty incumbent on the bank to be satisfied of the drawer's handwriting, before accepting or paying the check; and if the bank failed to attend to that, it was justly chargeable with neglect, for which, it, and not the innocent holder, should suffer. That as the bank was presumed to know the handwriting of the drawer, it had, by the payment of the check, taken this knowledge upon itself, and was estopped from asserting the forgery, as against the party who had passed it in good faith to the bank. That case is fully supported by various other adjudications, both in England and this country. The case of Price *v.* Neal (1) decides that a drawee accepting and paying a forged bill of exchange, to a *bona fide* holder, cannot recover back the money paid. In Smith *v.* Mercer, (2) it was held that bankers who paid to an innocent holder a forged acceptance of one of their customers, could not recover back the money, for the reason that it was their duty to have ascertained the authenticity of the acceptance, before honoring it. In the case of The Bank of the United States *v.* The Bank of Georgia, (3) the Bank of the United States had deposited with the Bank of Georgia certain notes, purporting to be the notes of the latter bank, which it received and credited as so much cash. It turned out that a portion of the notes had been fraudulently altered to larger

(1) 3 Burr. 1354. (2) 6 Taunt. 74. (3) 10 Wheat. 333.

amounts than they were issued for; and the Bank of Georgia, upon the ascertainment of the forgery, refusing payment of the credit, it was decided by the Court that the Bank of the United States was entitled to recover the full amount of the credit.

It results from these decisions, that a person who appears to be a contracting party to forged negotiable paper, is charged with a knowledge of its genuineness, and acts at his peril, when called upon by an innocent holder, for performance of the contract. If he accepts, or promises to pay, he is not permitted to repudiate his act because of the forgery, but is bound to perform it. If he pays, he cannot recover back the money; he takes upon himself the risk of the genuineness of the instrument.

As between other persons, who are not connected with the paper as parties, and stand in equal relations, each having the same means of ascertaining its genuinensss, the rule is essentially different; the question of authenticity is at the risk of the person passing the paper. In the case of Jones et al. v. Ryde et al. (1) it was decided that brokers who had discounted a forged navy bill for another, who had no knowledge of the forgery, might recover back the money they had paid for it, as money had and received to their use, upon failure of consideration. In the case of Markle v. Hatfield, (2) which was an action to recover the price of goods sold, and for which payment had been made in counterfeit bank notes, both parties at the time being ignorant of the forgery, it was adjudged that the plaintiff was at liberty to treat the payment as a nullity, and sue upon the original contract. In Young v. Adams, (3) it was held, where counterfeit bank notes were passed in payment of a precedent debt, that the party receiving the notes might recover the amount, in an action for money had and received. And in the case of Herrick v. Whitney et al., (4) the Court decides, that in the transfer of a promissory note, in the course of trade, there is an implied warranty on the part of the person passing it, that it is genuine.

These cases proceed on the principle, that the party receiving forged negotiable paper, has parted with his property, without receiving any compensation in return. As to him, there is a manifest failure of consideration. The party passing the paper parts with nothing valuable. He can receive back the forged paper, and resort to the person from whom he received it. It is but justice, therefore, to restore the parties to their original rights, and permit the one who has received the paper, by returning it as soon as the forgery is discovered, to sue on the original consideration, or recover back the money he has paid for it.

We are now to determine by which rule the present case is to be governed. If Samuel Wilson, in his lifetime, had received the note, there is no doubt but the payment would have been good,

(1) 5 Taunt. 488.　　(2) 2 Johns. 455.　　(3) 6 Mass. 182.　　(4) 15 Johns. 240.

and Alexander could not be compelled to refund. It is insisted by the counsel for the defendant, that as the plaintiff is the personal representative of the intestate, and acts in his stead, in collecting debts due the estate, and paying those due from it, the payment to him is to be regarded in the same light, as if made to the intestate. The administrator does not act in his own right, nor as the agent of the person who appears on the face of the forged note, to be a party to it; but he is the agent of the law, acting for the benefit of the creditors and distributees of the intestate. He has no connection with the note, and has not the same means of ascertaining its genuineness, and detecting the forgery, that his intestate would have had, if the note had been presented to him. He is responsible *to the* creditors and distributees of the estate, for a faithful disposition of the assets ; and if he disposes of any portion of them in voluntarily taking up notes against the estate which are not genuine, he may have to make good the deficiency. For these considerations, we are of the opinion it would be carrying the rule to an unreasonable extent, to charge the administrator with knowledge of the genuineness of an instrument, to which the name of his intestate purports to be affixed, as maker. In this view of the case, the instruction was erroneous, and as it unquestionably controlled the verdict of the jury, the judgment is reversed with costs, and the cause remanded for another hearing, consistent with this opinion.

*Judgment reversed.*