Sewall, J.
Two principal questions, suggested in the assignment of errors upon the bill of exceptions in this case have been fully and ingeniously argued — whether the action, in the particular form of it, being for money received to the use of the plaintiff", is supported by the evidence; and whether that evidence proves a case upon which the plaintiff" is entitled to recover.
The merits of this cause are said to be with the defendant, because, in the currency of bank bills, when they are offered and accepted in payment, without any warranty of their genuineness by the payer, or he is not provably guilty of knowing them to be false, the receiver takes them at his own risk, and has no remedy for any mistake; and in this case, no evidence is given of a warranty by the defendant, or of any fraudulent intention on his part in passing the counterfeit bill.
This doctrine, as applied to a case of counterfeit bills, is, in our opinion, extremely incorrect. The responsibility of the bank, when the bills paid are true and genuine, is, we believe, the risk of the receiver, in the case supposed; with one further exception, perhaps, which may be made respecting the real bills of a bank, when paid after a known failure ; if the fact be known or reasonably apprehended by the payer, and he conceal his knowledge from the party accepting the payment, and that is made under circumstances when he may be supposed ignorant of the fact or suspicions, and therefore not knowingly to incur any peculiar risk. And in allowing this immediate risk of the responsibility of banks, we go further in favor of the currency of bank notes or bills, than the authorities carry us, according to the decisions in cases of private notes or bills, or even bankers’ notes, in England, when accepted in payment. And it is to be remembered that bank bills are, f * 180 ] after all, * only private contracts, having no public sanction, similar to that which gives operation to the lawful money of the country. It seems, however, necessary to go thus far, in conformity to the usages unfortunately prevailing respecting bank bills in their loose and unrestricted currency, dangerous as it is to the welfare of individuals, and of the community. Private notes, that is, of individuals or companies, whether incorporated or not, where, I may add, the currency of them is not regulated by some notorious and peculiar usage, when accepted in payment or discharge of an existing contract, are taken at the risk of the payer ; and if, after due diligence to collect them, when found of none or of a doubtful value, they are returned seasonably to the payer without prejudice to his right or remedy, the former demand against him revives ; or the receiver becomes entitled to some equivalent remedy for the deficiency of the intended payment discovered by the event
*153 In the case cited and relied on for the plaintiff, of Stedman vs. Gooch, of Puckford vs. Maxwell, of Owenson vs. Morse, and of Dimsdale & Al. vs. Lanchester, the decisions were governed by the general principles I have stated, or principles of the same import, and they are explicitly recognized as settled law. In Puckford vs. Maxwell, decided in the Court of King’s Bench, Lord Kenyon says, in delivering the opinion of the court, “ In cases of this kind, if the bill'which is given in payment do not turn out to be productive, it is not that which it purports to be, and which the party receiving it expects it to be ; and therefore he may consider it as a nullity, and act as if no such bill had been given at all.”
In the ancient case of Vane and Studley, cited by Lord Coke in reporting Wade’s case, as said to have been adjudged, the question arising in the case at bar seems not to have been considered. There payment by the lessee of his rent, accepted by the lessor in money, among which some counterfeit pieces were afterwards found, was determined * to be a sufficient [ * 187 ] payment to prevent the reentry of the lessor, under a condition of the lease, which secured the payment of the rent at a certain day; for when the lessor had accepted the money, the reporter adds, it was at his peril, and after that allowance he shall not take exception to any part of it. But this must be understood according to the subject-matter, as a saving of the lessee’s forfeiture, where both parties had understood the condition to be performed ; and it is not to be understood as a decision that the lessor had no remedy for the deficiency in the money paid.
The other case, of Price vs. Neal, cited in the argument for the defendant, seems to be nearer to his purpose, in supporting the principle, that the risk of the genuineness of a note or bill received in payment, is upon the receiver. There two bills, purporting to have been drawn by Sutton upon Price, the plaintiff, were paid by him to the defendant Neal, to whom the bills had been endorsed for a valuable consideration ; one of them having been accepted by the drawee before it came to the hands of Neal. After some interval of time, the bills were discovered to be forged, and, before the action brought, one Lee, charged with the forgery, had been convicted and executed. But Price failed in his action, and was judged not to be entitled to recover back the money he had paid: because the defendant, being innocent of any fraud, and having paid a full consideration for the bills, might conscientiously retain the money he had received. Another, and, in my opinion, a stronger ground for the decision, intended, although not so prominently stated by the reporter, was because the plaintiff’s acceptance and payment of these false bills, considering them as drawn upon *154 himself, was his own peculiar negligence, by which the loss had been incurred ; and therefore it was not to be thrown back upon the innocent holder of the bills.
But the case at bar differs essentially, we apprehend, from the case of Price vs. Neal, which was a question between [*188] * the parties, real or supposed, to the forged bill, the party who allowed and paid it as a true bill having been guilty of positive, if not gross, negligence, in affording it the credit and currency which it obtained. Here the question is between those who have no concern, as parties nominal or real, in the forged bill, but who were parties in another contract, whether that contract has been discharged and paid in full, by the aid of the counterfeit bill.
Public policy, as well as the principles of fair dealing, obviously require that a mistake of this kind, after the deception has been detected and proved, should not be insisted on by the party who has the undue advantage, even when gained without any intentions of fraud on his part.
But, in considering this payment, upon the original contract between the parties, deficient so far as the counterfeit bill was reek oned in it, and the amount of that bill as remaining due, we come to the other objection, made for the defendant, to the form of the present action ; and the question to be decided is, whether an action for money had and received to the use of the plaintiff can be maintained for the balance due upon a promissory note, made for 252 dollars “ payable in foreign bills.” For whatever may be the import of the last words, the opinion of this Court, in the case of Jones vs. Fales, cited at the bar, seems to be a determination, that a note of this tenor is not absolutely and at all events a cash note; in which view only the doubt arose of the negotiability of the note given in evidence of that case.
Respecting the objection upon which the question now to be decided arises, and which appeared, upon the first suggestion of it, to be attended with some difficulty, it may be observed, that a promissory note or bill of exchange, unquestionably made for the payment of money, if restricted, by any contingency not an inevitable event, or to a particular fund, or to a mode of payment liable to any uncertainty in the amount or value to be paid, is not negotiable by the statute of Anne, or by the custom of merchants. (18) [*189] *The present question does not depend upon the quality of the note, whether negotiable or not, which was evidence of the contract existing between the parties in the case at bar, but whether the note was evidence of a contract *155 respecting money. Now, such is the affinity, if I may use the expression, between money and bank bills, by usages of which we take a judicial notice in considering the operation of the terms foreign bills, that the alternative between them and dollars, given by the tenor of the note in question, has very little effect to prevent its being estimated as equivalent to a contract for money. Besides, to give it the exclusive construction contended for in the objection, the term “ dollars ” seems to be overlooked, or confounded with foreign bank bills, notwithstanding the plain difference there is in the real import, whatever may be their nominal identity. The contract has its legal estimation by the term “ dollars,” and the permission to pay in foreign bills, though a conventional mode of payment, of which the promisor may avail himself, if he can, when the note is demanded, or due ; yet if he cannot, or will not, then it is recoverable as a contract for a sum of money payable according to the promise.
If, after a breach, the contract in question was to have its effect as a promise of a sum of money, the difficulty apprehended, and stated in this objection to the form of the present action, is entirely removed. For there can be no doubt, that, for a sum of money, which has become due upon a promissory note or bill, an action against the promisor, for money received to the use of the promisee in the bill, may be maintained. In the case of Dimsdale Sf Al. vs. Manchester, the plaintiffs, endorsees of a promissory note, recovered in this form of action against the promisor, the demand being for a balance of his note, which became eventually due, in a case very similar to the present. The plaintiffs held by endorsement the note of the defendant for 63Z., which was sent to her for payment; and a 10?. *note, received in part, turned [*Í9CÍJ out to be forged ; for the amount of which the action was brought and maintained.
Upon the whole, the balance remaining due, from the mistake discovered in the intended payment, was a sum of money in the hands of the defendant, due according to the note, which had been given up as paid ; and that balance is recoverable in this form of action, after his refusal to rectify the mistake, which, on the discovery of it, he was entitled to do, according to the tenor of the note, by paying a foreign bank bill; and thus far we might conform to the authority of the case cited from Lord Colee; but, having refused that, the balance of the note became due, and was recoverable in dollars or lawful money. (19)

Judgment affirmed.

 Chitty, 34, 173, 174. — Bull. N. P. 272, 273.

 [Phillips vs. Ford, 9 Pick. 39. — Lightbody vs. Ontario Bank, 11 Wend. 9.— Markle vs. Hatfield, 2 Johns. Rep. 455. — An action for money had and received will *156 in general, only lie where money may be presumed to have been actually received.— 2 Phillips's Ev. 117. — M’Lachlin vs. Evans, 1 Y. & J. 380. — Spratt vs. Hobhouse, 4 Bingh. 178. — But see Cole vs. Cushing, 8 Pick. 48. — Ellsworth vs. Brewer, 11 Pick 316. — Miller vs. Miller, 7 Pick. 133. —And see Ellis vs. Wild, post 321. — Ed.]