Parker, C. J.,
delivered the opinion of the Court. — We think the principle, that when, by means of a felony, one has been deprived of his property, the civil remedy is merged in the felony, if existing in full force in this country, in the manner laid down in some of the English authorities, does not apply to this action; which is not founded upon a felony, but upon a common contract for the loan of money, in which the lender has been deceived by the borrower, and deprived of the security upon which the loan was assented to. How far the principle may be applicable to a different class of these unfortunate cases, which have been argued at the present term, we do not determine ; as those actions are too important in their consequences to be decided while a particle of doubt remains in the minds of any of the Court.
The facts in this case show that the defendant Grafton proposed to the bank to present a note, in which he and his partner should be promisors, and Mr. Gushing and Mr. Scudder endorsers, for discount ; that, the proposal being agreed to, a note was made by Grafton, in the name of the house of Gore 8f Grafton, purporting to be payable to Thomas Gushing; that Grafton, having forged the names of the supposed endorsers, presented it to the bank for discount; *and that the amount, deducting the discount, was passed, in the bank books, to the credit of Gore &/• Grafton, they being indebted to the bank on other notes previously given in the same manner, on which similar forgeries had been committed by Grafton.
The bank, finding the security upon which they had agreed to make the loan had failed, by reason of the forgery of the names of the endorsers, and that they had thus been defrauded of a large sum of money, commenced this action, declaring for money had and received, and for money lent and accommodated, although the term of credit agreed upon the loan had not expired. They do not claim through the crime of Grafton; and it is immaterial to them, for the purposes of this suit, whether the security failed because of the forgery, or because the ability of the endorsers was not such as may have been represented, to induce them to make the loan.
*78 It is a case, as respects the plaintiffs, of money obtained from them by misrepresentation and fraud ; and we think the only question is, whether, upon a loan thus obtained, although upon credit, the bargain may not be disaffirmed by the lender, and an action presently commenced for money so obtained, as had and received, in a legal view, to his use. And upon this point we have no doubt; and we believe the doctrine has been generally received and practised upon in this commonwealth, that, when goods are purchased upon credit, or money borrowed, and the security agreed upon by the parties turns out to be of no value, and different from what it was represented to be by the debtor, it may be treated as a nullity, and an action will lie immediately for the sum it was intended to secure. (a)
This practice is undoubtedly founded upon certain decisions known to have taken place, and upon the justice and reason of the case. For if one gets possession of another’s goods or money by means of a fraudulent misrepresentation as to the value of the security which is the basis of the credit, it would be' absurd to consider the bargain f binding, to the prejudice of him who has been deceived, and to the advantage of the receiver.
The case of Stedman vs. Gooch, 1 Esp. Rep. 3, is full to this point. A milliner had sold goods and taken three promissory notes in payment, payable at the house of one Browne. On application there for payment, Browne said that Finlay, the maker of the notes, had no effects there. It was objected that, the notes having been taken in payment, no action would lie until they became payable; for they might be paid at the time stipulated. But Lord Kenyon ruled against the defence, and said that the law was clear that if, in pay *79 ment of a debt, a bill or note is taken payable at a future day, the creditor cannot legally commence an action until such bill or note become payable, or default be made in the payment; but that, if such bill or note be of no value, — as if, for example, drawn on a person who has no effects, and who therefore refuses it, — the creditor may consider it as waste paper, and resort to his original demand, and sue the debtor upon it.
There is no difference in principle between this case and the case at bar. For, admitting the note to be good, as evidence of a promise by Gore & Grafton, yet it is not what it purported to be, viz., a note payable to Cushing or order, and endorsed by him ; and therefore it may be treated as waste paper, and an implied promise immediately arises with the debtor, to pay the money instantly which has been thus obtained.
In the case of Puckford vs. Maxwell, 6 D. & E. 52, the same doctrine received the sanction of the whole Court of King’s Bench. There, Puckford having arrested Maxwell for a debt, the latter gave a draft for a part of the sum, and said he would settle the rest in a few days. The draft was dishonored, and it was held that a second arrest for the same debt was justifiable. The draft was treated as a nullity.
These cases were cited and recognized as law by this Court, in the case of Young vs. Adams, 6 Mass. Rep. 182.
* Indeed, there can be no question of the soundness of the principle, or of its applicability to this action. Here the credit was obtained upon an offer of adequate security. The security was wholly worthless. The consideration for the credit therefore failed, and the money thus wrongfully obtained could not, for an instant, be conscientiously retained. Ex cequo et bona, then, it ought to be returned ; and that is the foundation of the action for money had and received.
The case, then, is too clear to be doubted, as it respects Grafton, in the enormous frauds committed upon those with whom he dealt. How does it stand with respect to Gore, the innocent victim ?-• We regret to say, equally clear. The partnership was general. Grafton was the business man out of the store ; all the business at the banks, and in obtaining credits of individuals, was managed by him. He had full right to bind the firm to any extent, in contracts for the use of the partnership. The proceeds of these very notes were placed to the credit of the house in the books of the bank, and actually went to their use, to pay preexisting debts in the bank. So the jury must have found; and the facts warrant the finding. We consider the direction of the judge on both points correct in *80 point of law, and that the verdict was a necessary result from the facts proved in the case.

Judgment on the verdict.

 Care must be taken to distinguish between cases where an agreement has been made for time for the payment, independently of the security given, and the common cases in which goods are sold, and a bill taken in payment, payable at a future day, without any express agreement for time for the payment of the goods. In the last-mentioned case, if the bill be dishonored, the drawer may be sued immediately upon the original cause of action, without any regard being had to the time the bill has to run — because, there being no agreement as to time, the party takes the bill as payment, and therefore, if it turn out to be good for nothing, the creditor has not received that which the other undertook to give him, and may therefore pursue his remedy immediately.— 1 Selw.N. P. p. 75, 8th Lond. ed. — Stedman vs. Gooch, 1 Esp. c. 5. — Puckford vs. Maxwell, 6 T. R. 52. — Owenson vs. Morse, 7 T. R. 64. — Everett vs. Collins, 2 Camp. 515. —Dutton vs. Solomonson, 3 B. & Pul. 582.— Young vs. Adams, 6 Mass. Rep. 182. — Salem Bank vs. The Gloucester Bank, 17 Mass. Rep. 1.— Gloucester Bank vs. Salem Bank. 17 Mass. Rep. 33. If an assumpsit be brought for goods sold, before the time of credit is expired, the action cannot be maintained, although it should appear that the purchaser, at the time of the contract, fraudulently intended not to pay tor the goods. But in such case, it seems the vendor may treat the contract as a nullity, and bring trover immediately, and before the expiration of the credit, for the value of the goods. — Ferguson vs. Carrington, 9 B. & C. 59.