## GRAFTON BANK *versus* CALEB HUNT.

H. was indebted to a bank and R. agreed to let him have the money to pay the bank ; and K. being indebted to R. sent a note to the bank by P. to ascertain if it could be discounted. P. brought back the note with encouragement that it would be discounted ; upon which the note was delivered to H. who sent it to the bank by P. where it was discounted and the discount applied to the payment of H's debt to the bank—it was held, that the note must be considered as discounted on account of K. or R. and although the note was a forgery, H's debt must be considered as paid and satisfied.

Assumpsit upon a note dated April 12, 1826, for $1000, made by the defendant, and payable to the Grafton Bank, on demand, with interest, after sixty days. There were also counts for money had and received, money lent, and money paid.

The cause was tried here at November term, 1827, upon the general issue, when it appeared in evidence, that the note mentioned in the declaration, was made by the defendant, and in July, 1826, the defendant being indebted to the bank in the sum of $1140 upon the said note, and two other notes, one Samuel Ross agreed to let him have $1000 to pay to the bank. And Caleb Knight, being indebted to Ross, delivered a note for $200 payable to said bank, and purporting to be signed by Joseph Atwood, Daniel Noyes, and Moses Knight, to M. P. Payson, Esq, to carry to the bank and ascertain if it could be discounted.

Mr. Payson, on his return, informed Knight and Ross that the note would probably be discounted, and delivered the same to Ross, who delivered it, together with $800 in money, to Hunt. The note and money thus delivered by Ross to Hunt, together with another note signed by Hunt and others for $200, were sent to the bank by Mr. Payson. The two notes sent by Mr. Payson were discounted, and the amount received upon them being $395,80, and the $800 were applied to the payment of Hunt's three notes, and the balance, being $55,80, paid to Mr. Payson, and the three notes taken up and handed to Ross, who settled the transaction with Hunt and Knight.

It was afterwards discovered, that the note for $200, purporting to be signed by Atwood and others, was a forgery, and this action was brought to recover of the defendant the amount of that note.

A verdict was taken by consent for the plaintiff, subject to the opinion of the court upon the foregoing case.

*Woodbury*, for the defendant.

Caleb Knight was the principal in obtaining the discount upon the forged note, and Mr. Payson acted as his agent, and not as the agent of Hunt. The money obtained on that note went to the benefit of Caleb Knight, as his debt to Ross was thereby discharged. The note must therefore be considered as discounted on account of Knight. The debt of Hunt to the bank has been all paid in money. He is, therefore, entirely discharged. The two notes sent by Mr. Payson, were not received in payment of Hunt's debt, but were first discounted, and then the money was applied to the payment. The money received of the bank for the forged note was virtually received by Knight ; it was then paid to Ross, who loaned it to Hunt, and by Hunt paid to the bank. This is the real nature of the transaction.

This is not the case of a note payable to bearer and passed in payment to the bank by Hunt ; nor of a negotiable note payable to Hunt and by him transferred to the bank in payment ; nor of a note not negotiable but payable to Hunt and by him passed in payment. But the forged note was payable to the bank and was discounted like any other note. And as it was discounted upon the application of Knight, it must be considered as discounted on his account. Hunt, then, stands on the same ground as he would have done, had the money been actually paid to Knight by the bank, and had then passed back through the hands of Ross and Hunt, to the bank, in payment of Hunt's debt.

But on any other just view of the case the defendant is not liable. He knew nothing of the forgery.

He was at the utmost a *bona fide* holder. A note thus payable to the bank, and offered for discount, is a mere bill of exchange drawn on the bank by the signers ; and when discounted by the bank for a *bona fide* holder, the bank has no remedy against such holder. 1 W. Bl. 390 ; 3 Burr. 1354, *Price* v. *Neal.*

Courts have even gone so far as to hold, that, on bank-

ing principles, when a forged check is received in payment from a *bona fide* holder, the loss must fall on the bank, and not upon such holder. 4 Dallas, 234, *Levy* v. *The bank of the United States.*

*Bell,* for the plaintiffs, on the case stated, relied upon the following points and authorities.

1st, That Hunt's debt to the bank was never discharged but by the forged note.

2d, That the forged note was discounted for Hunt alone, and was applied to his sole benefit, and that the avails of the discount never were under the control of Knight or Ross, and never could have been paid over to them, or any other person, under the circumstances, but Hunt.

3d, That Payson was the agent of Hunt alone in his transaction with the bank, and whatever he did was done on Hunt's account.

4th, That this discount of the forged note was not a transaction by itself independent of the payment of Hunt's debt to the bank.

The forged note was received from Hunt by Payson in payment of his debt, in the same manner as the bank notes, making up the $800.

The bank would have paid out no part of the avails to Knight, Ross, or either of those whose names appeared upon the note, and not even to Hunt, as it was received in payment of his debt and not to increase their circulation.

5th, This is not the case of an acceptor of a forged bill. The bank is in no legal sense the acceptor of this forged note. That case is *sui generis,* and rests on principles peculiar to itself. *Markle* v. *Hatfield,* 2 Johns. Rep. 455.

6th, The claim of the bank upon the defendant was for $1140. This could only be paid in money. But $290 of it was paid in a forged note, and not money.

The plaintiffs have been guilty of no other or greater negligence in receiving this note from the defendant,

than they would have been in receiving a forged bill of the bank of the United States, or any other bank, to that amount. *Young* v. *Adams*, 6 Mass. Rep. 182 ; *Roget* v. *Merritt*, 2 Caine's Rep. 117 ; *Puckford* v. *Maxwell*, 6 D. & E. 52 ; *Markle* v. *Hatfield*, 2 Johns. Rep. 456, 462 ; *Owenson* v. *Morse*, 7 D. & E. 64 ; *Stedman* v. *Gooch*, 1 Esp. N. P. C. 3 ; *Dimsdale* v. *Lanchester* ; 4 Esp. N. P. C. 201 ; *The People* v. *Howell*, 4 Johns. Rep. 296 ; *Johnson* v. *Weed et al.*, 9 Johns. 310 ; *Putnam* v. *Lewis*, 8 Johns. Rep. 389.

The opinion of the court was delivered by

RICHARDSON, C. J. It seems to be well settled, that if forged bank bills are delivered in payment of a debt, it is no satisfaction of the demand. 2 Johns. Rep. 455, *Markle* v. *Hatfield* ; 5 Taunt. 488, *Jones* v. *Ryde*.

And where a counterfeit bill was received in payment of a promissory note, it has been held that the amount of the bill so received might be recovered of him who paid it, in an action for money had and received. 6 Mass. Rep. 182, *Young* v. *Adams*.

So if a seller of goods takes notes or bills for them without agreeing to run the risk of their being paid, and the notes turn out to be worth nothing, this will not be considered as payment. 7 D. & E. 64, *Owenson* v. *Morse* ; 9 Johns. Rep. 310, *Johnson* v. *Weed*.

And a draft upon a third person, delivered in payment of a debt, is no satisfaction unless it be accepted and paid. 6 D. & E. 52, *Puckford* v. *Maxwell* ; 1 Esp. N. P. C. 3 *Stedman* v. *Gooch*.

Certain bills of exchange purporting to have among others the endorsement of Harvey and Company, bankers, at Manchester, were presented for payment in London, at a house where the acceptance appointed them to be paid, and payment being refused, the notary who presented them, took them to Wilkinson and others, the London correspondents of Harvey and Company, and asked them to take up the bills for the honor of Harvey and Company. They did so, and the money was

paid to Johnson and others, the holders. It turned out that the names of the drawer, acceptor, and of Harvey and Company were forgeries. It was decided, that the money was paid by Wilkinson and others through mistake, and might be recovered back, on the ground that the fault of paying upon a forged signature, was not entirely their fault, but began, at least, with the person who called upon them. 3 B. & C. 428, *Wilkinson* v. *Johnson.*

So it has been held, that if a banker of a supposed acceptor of a forged bill discount it for the agent of one of the endorsers, on the discovery of the forgery, the banker so discounting may recover back the money he paid on the bill, notwithstanding he was the banker of the supposed acceptor, and therefore might be taken to know his hand writing. 1 C. & P. 197, *Fuller* v. *Smith.*

But when a forged bill of exchange is accepted by the drawee and paid to the endorsee, the money thus paid cannot be recovered back. 3 Burr. 1354, *Price* v. *Neal*; 17 Mass. Rep. 33, *Gloucester Bank* v. *Salem Bank*; 6 Taunt. 76, *Smith* v. *Mercer*; 1 Binn. 27, *Levy* v. *The Bank of the United States.*

One of the grounds on which these decisions rest, is, that it is incumbent upon the acceptor to be satisfied that the bill drawn upon him is the drawer's hand before he accepts.

In this case, we see nothing in the relation between the bank and those whose names were upon the forged note, that made it particularly incumbent upon the bank to know their signatures. This case then cannot be placed upon the ground of an order, or a bill of exchange accepted and paid. If Hunt had in the first instance carried the note to the bank himself, or had sent it, and procured it to be discounted, and had received the money, it would have been simply a case of passing a forged note, and the bank might have recovered back the money. So if Hunt had in the first instance received the forged note

of Ross, and sent it to the bank and delivered it in satisfaction of his notes to the bank, it would only have been a case of passing in payment a forged note, and would certainly have been no satisfaction.

But if the forged note was discounted upon the application of Ross or Knight, and upon their account, although the money may have afterwards been loaned to the defendant and applied to the payment of the note, there is no pretence that it was not a satisfaction.

The real question, in this case, then, is, was the forged note discounted on Hunt's account? If it were, the plaintiffs are entitled to judgment. If it were not, this action cannot be maintained.

There is no dispute with respect to the facts in this case. The forged note was made payable to the bank. It had been sent to the bank by Caleb Knight for discount, and encouragement had been given at the bank that it would be discounted, before it was delivered to the defendant. It was delivered to him with the view that the proceeds of it should constitute part of a loan of money Ross was making to him; and it is most manifest, that it was received by the defendant and sent to the bank on the strength of the encouragement which had been given that it would be there received.

The contract, between Hunt and Ross, as to the loan, was not closed before the note was discounted. For the case states that Hunt accounted with Ross for the proceeds of the note after it was discounted. The understanding between Ross and Hunt must have been, that if the note was discounted at the bank, Hunt was to account for the proceeds; if not discounted, that he should return the note to Ross. It is clear, then, from the nature of the transaction, that the forged note was never the property of Hunt, and that the discount must be considered as in fact made on account of Ross or Knight.

This view of the case is decisive against the plaintiffs, unless Hunt has so conducted with the note that the

bank are entitled now to consider it as discounted on his account. But we see nothing in Hunt's conduct which can give the bank any claim so to consider it. There is nothing on which such a claim can rest except the circumstance that the note passed through the hands of Hunt. But it passed through his hands in the same manner as through the hands of Mr. Payson. Both were mere agents, and this alone can furnish no legal foundation for such a claim.

Indeed, we are at a loss to conjecture on what ground of law, equity or justice, these plaintiffs can hope to recover in this case. If a loss has happened, which must be borne by one of these parties, on what principle is it to be shifted from the plaintiffs to the defendant ? The bank had seen the forged note, examined it, and given encouragement that the note would be there discounted. After this the defendant merely sent the note to the bank to be discounted for others. He had no occasion to enquire or examine whether it were genuine, or not. It was enough for him to know that it had been examined at the bank and no objection seen there. If then there was any negligence, any fault, it all belongs to the bank.

We are, therefore, of opinion, that the verdict must be set aside and a new trial granted.

*New trial granted.*