BiioaKEvr.ROTjGH, J.
I think there can be no reasonable doubt at this day that if a debtor, in payment of an antecedent debt, pays to his creditor a piece of counterfeit money, or a bank note usually received as money, but which turns out to be counterfeit, it is not a good payment. Jones v. Ryde, 5 Taunt. 488. Young v. Adams, 5 Mass. Rep. 182. Markle v. Hatfield, 2 Johns. Rep. 458.
Although, however, this general proposition is true, yet the policy of the la.w requires that after the detection of the counterfeit character of the money (whether coin or bank notes) there should be no negligence or want of diligence on the part of the creditor who receives it, in giving information to the payer of the true character of the money, and in returning it to him and demanding payment. Indeed, justice to the debtor requires it. By giving him this notice, and returning it to him in a reasonable time, he will be perhaps enabled to ascertain from whom he received it, and to trace it back from holder to holder, till it shall be returned either to the original forger, or to him who passed it *622 knowing it to be counterfeit. If the innocent receiver of the note neglects his duty in this respect; if he holds it up after he ascertains it to be counterfeit, without returning it in due time to the payer, he ceases to be innocent, or at least is more in fault than the innocent payer, and this neglect must necessarily affect his remedy.
In Young v. Adams, the note was ascertained to be counterfeit on the day after it was received; and on the day after the detection it was sent to the payer, and he was required to give a true bill in lieu of the counterfeit, which he refused to do, or to make compensation for it. In Markle v. Hatfield, the counterfeit note was paid away by the plaintiff on the same day he received it, to a third person, and soon afterwards it was discovered to be counterfeit, and returned to the plaintiff; and though the report does not state in what space of time it was sent back to the defendant, no objection was made of any delay in returning it to him, and it is to be presumed that the demand was speedily made. Recoveries were had in those cases, on the general principle that a payment in counterfeit money was not good, no laches being imputable to the plaintiffs.
There is a class of cases in which the receiver of bank notes in payment of antecedent debts is held to greater strictness than in the cases which I have mentioned, and in which the very reception of them, being founded in laches, is deemed a ground for excluding the receiver from any right to recover from the payer. I allude to the cases of United States bank v. Bank of Georgia, 10 Wheat. 333. and Gloucester bank v. Salem bank, 17 Mass. Rep. 33. in both of which the payments were made in notes purporting to be the notes of the very bank to which they were paid. The foundation of the judgments in those cases was, that the receiving officers of the bank were bound to know whether notes purporting to be its own notes were genuine or not, and if they do not use the means which they possess of de *623 tecting those which are spurious, they are guilty of a ° . . in neglect of duty m receiving them; they are not wholly innocent, and the payer being clearly innocent, the loss shall fall on the receiver.
In the case before us, the note deposited with the bank was not one purporting to be its own, and I do not mean to say that the mere reception of the counterfeit note proved such negligence on the part of the Northwestern bank as would defeat its right of action. It had not the same means of detection as the banks had in the two above mentioned cases, and consequently it was not a violation of public duty in the receiving officers of the bank to fail in the detection. But the same general principle which runs through the cases will apply to this, namely, that laches will defeat the right of action.
The note deposited by Tindall with the Northwestern bank was paid to the Cincinnati bank, and by the latter bank was returned to the Northwestern bank on the 8th March 1825 as a counterfeit note. A period of two months afterwards elapsed before the Northwestern bank returned it to Tindall, and there is no proof that Tindall had any notice of it before that time. Here the neglect began, and it seems to have been gross neglect. The distance was not so great but that. Tindall might have been notified of the fact, and the note returned to him, within a few days after the note was returned to the bank. Why then this unreasonable delay of two months ? If the bank had within a reasonable time applied to Tindall to take back this spurious note, he might have ascertained to a certainty whether Jackson or some other person had passed it to him, and thus have relieved himself of the loss : but by the delay the opportunity might have been lost to him forever.
It has, however, been argued that Tindall waived the objection to the delay in returning him the note, and waived his right to claim protection from the neglect of *624 the bank. I do not think so. It does not appear from the evidence of Caldwell, or any other, that Pindall was informed of the period at which the detection of the . x counterfeit character of the note occurred, or at what time it was returned to the bank as spurious. I see no ground on which to charge him with a waiver of that which he did not know. I am for reversing the judgment.
Case, J.
This case comes to us on an appeal from a judgment of the court below, rendered on a demurrer to evidence. On the 19th of November 1824, Pindall deposited in the Northwestern bank 354 dollars 35 cents. Of this, a note of 100 dollars was afterwards found to be forged. The bank soon passed off the money, it not being a special deposit to be returned in the same notes. Pindall checked for the full amount, and the bank paid it. After this, on the 8th March 1825, this 100 dollar note was returned to the bank as forged, and taken back. There is no doubt of its being a forged note. In the month of May following (we are not told on what day) the note was sent by the bank to Pindall, with a declaration that it was forged, and a request that he would return to the bank the amount in good money. He did not do so. He died soon after; and this suit is to recover against his representatives this sum. The court below has given judgment for the plaintiffs: we are to say whether correctly or not. The question presented is, of two persons equally innocent and ignorant of the forgery, and equally free from fault in failing to detect that forgery, which shall bear the burden ? This case is different from Price v. Neal, 3 Burr. 1354. because there, “ it was incumbent” (says lord Mansfield) “ on the plaintiff to be satisfied that the bill drawn upon him was the drawer’s hand, before he accepted or paid it, but it was not incumbent on the defendant to inquire into it.” In our case, it was not more incumbent on *625 the one party than the other, to ascertain the genuineness of the note. Nor is this case like that of United States bank v. Bank of Georgia, for that also turned on the obligation there was on the bank to know its own notes, and the mischief which would result to the community from suffering such institutions to receive notes purporting to be their own, and after such adoption of them, return them to those from whom they took them. All this class of cases turns upon the negligence or want of caution in one of the parties. There is another class where, in discharge of a pre-existing debt, the debtor has paid forged paper or base coin. Markle v. Hatfield, 2 Johns. Rep. 455. Young v. Adams, 6 Mass. Rep. 182. Jones v. Ryde, 5 Taunt. 488. Bruce v. Bruce, 5 Taunt. 495. In these cases it is decided that such payment is not good, and that if there be no negligence in the party, he may recover back the consideration he has paid, or sue upon his original demand. But there seems to be a distinction taken between such cases and the one at bar, where there was neither pre-existing debt nor laches in either- party, but a mere every day transaction of deposit in the way of trade and commerce; a transaction by which the bank itself is the gainer, having the right to discount and make profit on these deposits. I do not say that I perceive very clearly the force of this distinction, nor do I mean to place my opinion upon it; but it is taken by high authority. Thus in Gloucester bank v. Salem bank, 17 Mass. Rep. 33. Barker, C. J. lays down the general rule as follows—“ The just and sound principle of decision has been, that if the loss can be traced to the fault or negligence of either party, it shall be fixed on him. Generally, where no fault or negligence is imputable, the loss has been suffered to remain where the course of business has placed it.” After taking this as the rule, he says that “ the class of cases before referred to differs from it in this, that there the party received, in discharge of another con *626 tract, something which purported to be of value, but which was worth nothingand he refers to Young v. Adams, 6 Mass. Rep. 182. where Sewall, J. delivering the opinion of the court, takes the same distinction. But repeat that the reason of this distinction does not strike my mind as deserving much weight. I think the case is with the defendants : and without deciding how it might have been if the bank had used due diligence in returning the note and demanding payment, I found myself upon the ground that it has been guilty of gross negligence, and therefore has no right to come upon Pindall. All the cases,—Markle v. Hatfield, Young v. Adams, Jones v. Ryde, United States bank v. Bank of Georgia—, which say that in the case of a pre-existing debt discharged in forged notes, a recovery may be had, qualify the right by saying that if there be no negligence the party may recover. In the last case quoted Story, J. says—“Even in relation to forged bills of third persons, received in payment of a debt, there has been a qualification engrafted on the general doctrine, that the notice and return must be within a reasonable time; and any neglect will absolve the payer from responsibility.” And this is most reasonable : every man feels that it is so. A man in business receives and pays out large sums of money: this consists of the notes of various banks forming the currency of the country: if among his payments there be forged notes, and they are returned while the transaction is recent, he can generally resort to some clue, from loose memoranda, or memory, which may lead him to the person of whom he received them; but suffer months to elapse, and it becomes utterly impossible. Nor should a party in such a case be held to shew that he had suffered actual damage by the delay: such a requisition would nullify the rule. How can a man prove that if he had received notice sooner, he would have been able to trace the note ? The very fact that he is unable, when called on at a late *627 day, to trace it, shews that he cannot prove how he could have done so at an earlier day. I do not say that the receiver of such note shall be held to the same diligence as the holder of commercial paper dishonoured; but I do say that he ought to be held to reasonable diligence. Here the bank received the note back as a counterfeit on the 8th March 1825 : Wheeling is only 110 miles from Clarksburg: the mail passed once a week duly: every mail furnished a safe opportunity: and yet two months are suffered to pass before the note is sent. Will not every one say that this was unreasonable, gross neglect ? But it is contended that Pindall waived this delay. There is certainly no express waiver; and we know that a demurrant has no right to expect the court to draw inferences in his favour. But there is no ground for an inference that Pindall meant, by his conduct, to give up any right or advantage, which the conduct of the bank had given him. I am for reversing the judgment, and entering a judgment for the plaintiffs in error.
Tdcker, P.
In the examination of this question, I shall consider, first, whether a party who passes a counterfeit note in the course of business or in payment of an antecedent debt, is responsible for the amount to the person to whom he passed it. Upon this point although we have no adjudication of this court, yet we have the advantage of express decisions both of the courts of Great Britain and of our sister states. Without encumbering this opinion with a review of the cases which have turned upon forged bills of exchange and other mere securities for money, I shall pass at once to those which have had immediate reference to bank notes, which pass as money, which constitute a part of the common currency of the country, and are not, like bills of exchange, considered as mere securities or documentary evidences of debts. 1 Burr. 457. To begin with *628 the british cases. In the case of Jones v. Ryde, 5 Taunt. 488. it was decided that a person who discounted a forged navy bill (which, it seems, passes as money) was entitled to recover back the money paid, on the ground of failure of the consideration. In delivering his opinion, Gibbs, C. J. compares the case to that of forged bank notes, in which he states it to have been decided by Mansfield, C. J. that he who passed them was responsible for the amount; and Heath, J, in the same case distinctly avows the same opinion. In the same term another case, upon a victualling bill, was decided upon the same principles. Bruce v. Bruce, 5 Taunt. 495, And it must not be omitted, that in speaking of the transfer of bank notes it is said, “ The party negotiating them is not, and does not profess to be, answerable that the bank of England shall pay the notes, but he is answerable for the notes being such as they purport to be.” We come next to the american cases. In Young v. Adams, 6 Mass. Rep. 182. it was held that where a counterfeit bill was received in payment, the payee might recover the amount from the payer in an action for money had and received; and in Gloucester bank v. Salem bank, 17 Mass. Rep. 33. this opinion is cited and obviously acquiesced in by Parker, C. J. though upon other grounds the decision was against the plaintiffs. In New York the same principle was recognized in the case of Markle v. Hatfield, 2 Johns. Rep. 455. where the subject is examined by Kent, C. J. with his usual ability. And lastly in the case of United States bank v. Bank of Georgia, in the supreme court, 10 Wheat. 333. Story, J. in delivering the opinion of the court, admits that the modern authorities do in a strong manner assert, that a payment received in forged paper or base coin is not good, and that if there be no negligence in the party, he may recover back the consideration paid for them, or sue upon his original demand; and he proceeds throughout upon a concessum of this principle, wherever the pay- *629 merit is made in the notes of a third party, though he considers the receipt by a bank of notes purporting to be its own, without an immediate rejection, as equivalent to an adoption of them.
At first view, perhaps it may seem that this course of adjudication is inconsistent with the just and well established principle, that as between parties equally innocent and ignorant, a loss shall remain where the chance of business has placed it; for there can be no reason for throwing a loss from the shoulders of one innocent man upon another who is equally innocent. Price v. Neal, 3 Burr. 1354. 17 Mass. Rep. 42. But it must be recollected that, in the eye of the law, diligence is meritorious and negligence is a fault; and the law will not hold him guiltless who has not exercised proper care and circumspection in the conduct of his affairs. Therefore, in the circulation of these counterfeit bank bills, he who has been negligent must yield to the superiour diligence of those with whom he deals. I incline to think that this is the true principle upon which the responsibility proceeds. He who passes a counterfeit bill in payment, or receives value for it, gets something for nothing, and upon principles of natural justice must refund, unless he be exempted upon the ground that he is equally innocent with the person to whom he passed it. But to put the parties on an equal footing, both must have been equally diligent. Waiving the remark that he who has detected a counterfeit bill and arrested its circulation, has more merit than the man who passes it without examination, it may be more broadly stated, that he who, in receiving a counterfeit bill, is vigilant and circumspect in taking the proper means for fixing the passing of it to himself upon the proper person, is more meritorious than the man who takes no such precaution. Besides the probability that such a course of diligence might lead to the detection of the original circulator, and tend mainly to arrest the *630 base circulation, there is much reason, upon general legal analogies, for extending to the payee of the bill the fall benefit of his diligence. If the payer has been equally diligent, he will recover over; and if he has noí> he has only his own folly and negligence to complain of. Upon the whole therefore, I think it clear, both upon reason and authority, that the payee of a bank bill which is counterfeit may recover the amount of it in an action for money had and received against the payer.
Secondly, I shall inquire whether he will lose this right by neglecting to give notice to the payer in a reasonable time, that the bills are spurious. The affirmative of this proposition seems to be a necessary consequence of the very principles we have just been laying down. The right of the payee to recover, and to throw the loss back upon the person who passed the note to him, though such person may have been equally innocent and ignorant of its spurious character, arises from the obligation upon the conscience of the party to refund that which he has received without value. But the conscience of the payee, on the other hand, binds him, in the assertion of this demand, to use all diligence to protect the payer from loss on his part. There is a privity between them, arising out of the obligation to refund, which demands that the payee should leave nothing undone for his safety. Now the most obvious means of saving him from loss is immediate notice that the bills are spurious, to enable the payer to ascertain, while the transaction is yet recent, from whom he received them. Accordingly we find, in the cases before cited of Gloucester bank v. Salem bank, and United States bank v. Bank of Georgia, the principle is recognized, that-the right of recovery may be lost by the unreasonable delay of notice. In those cases the authorities were elaborately reviewed, and the conclusion to which the courts arrived was, that the payees of the notes were *631 bound to give notice within a reasonable time, or they could not afterwards recover. In those cases indeed, the payments having been made in paper purporting to be that of the receiving bank, that bank was held to a prompt examination and notice, and in default of it, wras deemed to have adopted the notes as its own. In the case of third persons, however, the principle must be modified. He who receives a bank note in the course of business is not bound to take it to the bank to ascertain its genuineness ; for such a requisition would stop the circulation of bank paper. But whenever the spurious character of the paper is ascertained, the holder is in foro conscientice bound to give reasonable notice, or he will forfeit his right of recovery; for “it would be very mischievous, and men would never feel safe in suffering bank notes to pass through their hands, if they were liable to be called upon, at remote periods, to make good such as might be discovered to be spurious.” 17 Mass. Rep. 45.
It is obviously impossible to lay down any precise rule, or to fix any precise time within which notice must be given. It is sufficient to say that it must be reasonable. Now in this case I think it was not so. When the base character of the paper, was discovered, does not appear; but it was before the 8th of March, and Tindall had no notice till the 19th of May. An earlier notice might have enabled him to fix liability upon Jackson or some other person, and though (to use the language of Parker, C. J.) “there is no evidence from which it can be ascertained that he could have saved himself if he had received earlier notice, yet the law itself will presume that a change of circumstances had taken place which justified him in resisting the action.” The law will not cover the neglect of the bank, by taking it for granted that Tindall would not have been bettered by earlier notice. It is against its analogies to enter into an inquiry whether a surety or guarantee is injured *632 or not, by the negligence or misconduct of the party seeking to enforce the security. He has no right to judge for the party whom he seeks to charge, but must strictly perform the duties imposed upon him by his situation, or he will forfeit his recourse.
As to the supposed waiver of notice, I think there is no pretence for the application of the principle; and upon the whole I am of opinion to reverse the judgment, and enter judgment for the defendants below.
Judgment reversed, and judgment entered for the plaintiffs in error.