## Case No. 12,658.

SEMMES et al. v. WILSON.

[5 Cranch, C. C. 285.] [1]

Circuit Court, District of Columbia. March Term, 1837.

NOTES—SALE OF OVERDUE FORGED NOTE—CONSIDERATION.

1. The jury cannot infer that the plaintiffs agreed to run the risk of a note's being a forgery, because it was passed to them long after it was dishonored, and at a discount of 10 per cent. and interest less than its nominal amount.

2. A person who sells a note is always understood as affirming that it is what it purports to be, namely, a genuine note.

3. If it is not what it purports to be, it is nothing, and may be treated as a nullity; and it is not material whether it be given in payment of an antecedent debt, or in exchange for goods immediately sold and delivered, or to be sold and delivered at a subsequent day.

[Cited in brief in Boyd v. Mexico Southern Bank, 67 Mo. 539.]

4. In the first case, it would be no payment; in the second and third cases, there would be a total failure of the consideration; and the person who has parted with his property, in expectation of a consideration, which has failed, may resort to his original cause of action.

5. To enable a plaintiff, who has received from his debtor a forged note, in payment of a precedent debt, to recover upon his original cause of action, it is not necessary for the plaintiff to prove that the defendant knew that the note was forged, when he passed it to the plaintiff, or that he passed it fraudulently.

6. It is only necessary for him to prove that the note was forged, and was passed to him by the defendant, for a valuable consideration, after it was dishonored.

7. It is not necessary that the plaintiff should prove, that he had instituted suits against the maker and indorser of the note, and failed to recover in such suits.

8. He has a right to establish the forgery in a suit directly against the party who passed the note to him.

9. If the innocent bona fide holder of a forged note, which he has received for a valuable consideration, passes it to another innocent person, bona fide, and for a valuable consideration, without indorsing it; although not liable upon the note, he is liable for the amount he has received for it, provided the other party has not been guilty of such negligence as would deprive the person from whom he received the note, of his remedy

[1] [Reported by Hon. William Cranch, Chief Judge.]

against prior parties who might be liable to him, and has given notice and offered to return the forged paper in a reasonable time.

10. The person, who passes away a forged note which has lain a long time dishonored in his hand, is not wholly free from blame in not having discovered the forgery; and on that ground may be liable to refund to the person to whom he passed it, the consideration which he received.

Assumpsit, for lumber, sold and delivered. The evidence was, that the defendant [William Wilson], in payment of a debt, due to him, received a note purporting to be made by one W. Lancaster, dated February 9, 1833, for $150, at 60 days, payable to and indorsed by one Eleanor Gardiner in blank; and due on the 10th-13th of April, 1833. The defendant indorsed it in blank, and put it into a bank for collection. It was not paid at maturity, and the defendant withdrew it from bank, erased his indorsement, and offered it to the plaintiffs for $136.75, payable in lumber. The plaintiffs accepted the offer, received the note, and gave the defendant the following due-bill: "Due William Wilson $136.75, payable in lumber. $136.75. Shepard and Mudd. May 27, 1833." Lumber to the amount of $179.94, was delivered by the plaintiffs to the defendant, from time to time, as he wanted it, commencing on the 28th of May, and ending on the 4th of October, 1833. On the 4th of January, 1834, the account was settled by crediting the defendant $136.75 for the note, and $43.19 in cash for the balance. It was afterwards discovered that the note was a forgery; the names of the maker and first indorser being forged. The defendant was ignorant of the forgery when he passed it to the plaintiffs, although it had then been dishonored, and had laid over, at least, forty-four days. It did not appear that the note had been protested.

Upon the trial, Mr. Bradley, for defendant, prayed the court to instruct the jury that if, from the evidence, they should be of opinion that the note was sold by the defendant to the plaintiffs, long after it became due, at ten per cent. and the interest less than the real amount of the note, then it is competent for them to infer that the said discount was intended to cover all risks upon the note, including the risk of its being forged. Which instruction THE COURT (nem. con.) refused to give.

The defendant's counsel then prayed an instruction to the jury that unless they should believe, from the evidence, that the said note was a forged note, and that the forgery was known to the defendant when he passed it to the plaintiffs, and not known to the plaintiffs; and that so knowing the same, the defendant fraudulently passed the said note to the plaintiffs, after the same had been due and unpaid for the space of nine months and upwards; and the plaintiffs paid him the sum of $136.75, being the amount due, after deducting the interest and ten per cent. on the gross amount of the note, then the plaintiffs are not entitled to recover. Which instruction, THE COURT, also, (nem. con.) refused to give.

The counsel for the defendant, then prayed the court to instruct the jury, that the plaintiff is not entitled to recover in this action, unless the jury shall be satisfied by the evidence, that suits were instituted by the present plaintiffs against the drawer and indorser of the said note; and that, in such suits, the plaintiffs failed to recover. Which instruction, THE COURT (THRUSTON, Circuit Judge, contra,) refused to give.

The verdict being for the plaintiff, the defendant's counsel moved the court for a new trial, and assigned the following reasons: 1. Because the court misdirected the jury upon the questions of law submitted to them on the part of the defendant. 2. Because the court permitted testimony to go to the jury, after the same had been objected to by the defendant, to prove the forgery of the names of the maker and indorser of the promissory note offered in evidence by the plaintiffs. 3. Because the court permitted the said promissory note to be given in evidence to the jury. 4. Because the verdict was against the law, and against the evidence.

CRANCH, Chief Judge (THRUSTON, Circuit Judge, absent). The first prayer required the court to instruct the jury that they may infer that the plaintiffs agreed to run the risk of the note's being a forgery, because it was passed to them long after it was dishonored, and at ten per cent. (and interest) less than its nominal amount; and in refusing that instruction, it is said the court erred. When a person sells a note he is always understood as affirming that it is what it purports to be; that is, that it is a genuine note. If it is not what it purports to be it is nothing, and may be treated as a nullity; and it is not material whether it be given in payment of an antecedent debt, or in exchange for goods immediately sold and delivered, or to be sold and delivered at a subsequent day. In the first case it would be no payment; in the second and third cases there would be a total failure of the consideration; and the party who has parted with his property in expectation of a consideration which has failed, may resort to his original cause of action. A deduction of ten per cent. and interest upon a dishonored note, not indorsed by the party who offers it for sale, would only justify an inference that the party who purchased it had agreed to take the risk of the responsibility of the parties whose names appear upon the note. No one who purchases a note ever thinks of taking upon himself the risk of its being a forgery; nor does he ask the vendor whether it is, as it purports to be, a genuine note. The question, among merchants, would be deemed an insult. It would imply that the vendor knew whether it was or not a forgery; and that if it was, he must be a knave to offer it. He must be considered, therefore, as offering it as a genuine note; and ten per cent. is a moderate discount upon a dishonored note, even if it be a genuine note of solvent parties. The longer

the note remained in the hands of the defendant after it was dishonored, the greater right had the plaintiffs to suppose it to be a genuine note; for it would be reasonable to infer that the defendant would inquire why the note was not paid at maturity; and that if it were not genuine, the forgery would have been discovered. The plaintiff could not suppose that the defendant intended to sell him a counterfeited or a forged note; and as the defendant had had time to discover the forgery, if it was one, the plaintiff must have had full confidence in the genuineness of the note. Neither the length of time since the note became payable, nor the rate of discount, would have justified the jury in inferring that the plaintiffs took on themselves the risk of the note being forged. The plaintiff was not put upon inquiry, by the defendant, as to the genuineness of the note; on the contrary, the length of time that it remained in the hands of the defendant, after it was dishonored, tended to lull him into security upon that point. We think, therefore, that the first instruction prayed by the defendant, was correctly refused.

The second instruction prayed by the defendant's counsel was, that the plaintiffs were not entitled to recover "unless the jury should believe, from the evidence, that the said note was a forged note; and that such forgery was known to the defendant at the time he passed it to the plaintiffs, and not known to the said plaintiffs, and that so knowing the same, the defendant fraudulently passed the said note to the plaintiffs after the same had been due and unpaid for the space of nine months and upwards, and that the plaintiffs paid him the sum of $136.75, being the amount due, after deducting the interest and ten per cent. on the gross amount of said note." This instruction was refused by the court, because they were of opinion that it was not necessary to the plaintiffs' right of action, in this case, that they should prove any of the facts stated in this second prayer, other than that the note was a forged note, and passed, by the defendant, to the plaintiffs for a valuable consideration after it was dishonored. There was no evidence that nine months had elapsed, after the dishonor of the note before it was passed to the plaintiffs. The note fell due on the 10th-13th of April, and it appears from the due-bill given by the plaintiffs to the defendant for lumber, that it was passed to the plaintiffs on the 27th of May, forty-four days after it fell due. The court, however, do not deem the length of time material; except, that the longer it was the less excuse had the defendant for not having discovered the forgery. The court is still of the opinion that the plaintiffs' right to recover in this action, does not depend upon their proving fraud in the defendant, and that this second instruction was properly refused.

The third instruction prayed by the defendant's counsel, was, "that the plaintiffs are not entitled to recover in this action unless the jury shall be satisfied, by the evidence, that suits were instituted by the present plaintiffs against the drawer and indorser of the said note, and that in such suits the plaintiffs failed to recover." Among the cases cited, and many others which have been examined, where suits have been brought to recover money paid upon forged instruments, not one has been found to support the doctrine contained in this prayer. In all of them the forgery has been primarily and directly proved, or attempted to be proved, in the action against the party who passed the forged paper to the plaintiff; and no intimation or suggestion that there should be a suit first brought against the parties whose names were forged. We think this instruction also was correctly refused; and that the plaintiffs had a right to give the note in evidence, and to prove the forgery in this action. The specific grounds alleged for a new trial are, therefore, overruled.

But there is a general allegation that the verdict was against law and evidence. The whole evidence is not stated, but we believe the facts which it tended to prove were as before mentioned. It did not appear at what time the plaintiffs first discovered the forgery, nor when they first gave notice of it to the defendant. It seems to be well settled by the cases which have been cited and examined, that if the innocent, bonâ fide, holder of a forged note which he has received for a valuable consideration, passes it to another innocent person, bonâ fide, and for a valuable consideration, without indorsing it, although not liable upon the note, he is liable for the amount he has received for it, provided the other party has not been guilty of such negligence as would deprive the person, from whom he received the note, of his remedy against prior parties who might be liable to him, and has given notice, and offered to return the forged paper in a reasonable time. See Jones v. Ryde. 5 Taunt. 488; Wilkinson v. Johnson, 3 Barn. & C. 428, 5 Dowl. & R. 403; Fuller v. Smith, Ryan & M. 49, 1 Car. & P. 197; Chit. Cont. 191, who cites the above cases; Gloucester Bank v. Salem Bank, 17 Mass. 33; Markle v. Hatfield, 2 Johns. 455; Young v. Adams, 6 Mass. 182; Smith v. Chester, 1 Term R. 654; Price v. Neal, 3 Burrows, 1354; Puckford v. Maxwell, 6 Term R. 52; Owenson v. Morse, 7 Term R. 64; Bank of U. S. v. Bank of Georgia, 10 Wheat. [23 U. S.] 333. In Wilkinson v. Johnson, 5 Dowl. & R. 411, the court said, "And though, where all the negligence is all on one side, it may, perhaps, be unfit to inquire into the quantity, yet where there is any fault in the other party, and that other party cannot be said to be wholly innocent, he ought not, in our opinion, to profit by the mistake into which he may, by his own prior mistake, have led the other party; at least, if the mistake is discovered before any alteration in the situation of any of the other parties; that is, while the remedies of all the other parties entitled to remedy are left entire, and no one is dis-

charged by laches." "We think the payment in this case was a payment by mistake, and without consideration, to a person not wholly free from blame, and who ought not, therefore, in our opinion, to retain the money." In the case of Fuller v. Smith, Ryan & M. 49, Abbot, C. J., said: "If you take a bill without indorsement, you cannot sue the person from whom you receive it," (meaning, no doubt, upon the bill) "but then you take it as a bill; but here, in fact, the instrument, on the faith of which the money was advanced, turns out not to be a bill of exchange as it was represented, being altogether a forgery; and that I take to be the distinction." Chitty (Cont. 191) says: "A person who discounts a forged navybill, bank-note, or similar instrument, for another who passed it to him without knowledge of the forgery, may recover back the money. as paid by mistake. In such case also there is a failure of the consideration." He cites the cases from 5 Taunt. 488; 1 Ryan & M. 49; 3 Barn. & C. 428; 6 Taunt. 76; 3 Burrows 1354. In the case of Bank of U. S. v. Bank of Georgia, 10 Wheat. [23 U. S.] 344, Mr. Justice Story says: "Even in relation to forged bills of third persons received in payment of a debt, there has been a qualification ingrafted on the general doctrine, that the notice and the return must be in reasonable time, and any neglect will absolve the payee from responsibility." In the case of Gloucester Bank v. Salem Bank, the plaintiffs had received forged notes purporting to be notes of their own bank, and paid them; and, fifteen days afterwards, gave notice to the defendants from whom they had received them, and then brought suit to recover back the money.

Parker, C. J., said, "The true rule is that the party receiving such notes" (forged bank-notes) "must examine them as soon as he has opportunity and return them immediately; if he does not he is negligent; and negligence will defeat his right of action. This principle will apply in all cases when forged notes have been received; but certainly with more strength when the party receiving them is the one purporting to be bound to pay; for he knows. better than any other, whether they are his notes or not; and if he pays them. or receives them in payment, and continues silent after he has had sufficient opportunity to examine them, he should be considered as having adopted them as his own." In the present case, it has been before observed that it does not appear when the forgery was first discovered, nor at what time the plaintiffs gave notice of the forgery to the defendant. If the plaintiffs kept the note a long time without inquiry, it may have been that they were lulled into security by the defendant's having kept the note so long after it was dishonored; and if there was negligence on their part, there was at least as much (we think more) on the part of the defendant. And we should say, with the court of king's bench in Wilkinson v. Johnson (5 Dowl. & R. 411): "We think the payment" by the plaintiffs, "in this case

was a payment by mistake, and without consideration, to a person not wholly free from blame, and who ought not, therefore, in our opinion, to retain the money."

We think, therefore, the motion for a new trial must be overruled. Judgment for the plaintiff.