Sullivan, J.
Assumpsit on a promissory note by MoClurhin against the appellants. The defendants below pleaded: 1, Non assumpsit; 2, Payment; 3, As to $655 part of the sum demanded, payment in' treasury notes of the State of Indiana, which the plaintiff received in satisfaction and discharge of so much of said debt, &e.; 4, As to $655, part, &e., payment generally. Similiter to the first plea. Replication to the second plea, denying the payment. To the third plea, the plaintiff replied that it was true that the defendants did, on, &c., deliver to said plaintiff the sum of $655 in treasury notes of the State of Indiana, issued under the law of the 15th of February, 1840, and which were intended to be in discharge of so much of said note, but that at the time of the delivery and acceptance thereof as in said plea alleged, they falsely and fraudulently represented to the plaintiff, that said notes were good and current as a circulating medium of the *442 country, as they had been uniformly theretofore, when in truth and in fact the said notes were then, and for a long time previously had been, to wit, &c., greatly under par and depreciated, &c.; and further that said plaintiff did, on the same day on which said pretended payment was made, and so soon as he discovered their depreciáted character, tender the same to the defendants and offer to return them, but they refused to accept them, &c. The replication to the fourth plea was substantially the same as the replication to the third. Demurrers to the replications were filed by the defendants, and overruled by the Court. The issues on the first and second pleas were, by consent of parties, tried by the Court,.and judgment was rendered for the plaintiff. •
The following were the facts of the case: The defendants were indebted to the plaintiff $1,000 by a promissory note payable March the 1st, 1842, which note was produced on the trial. On the back of the note a credit was indorsed in the following words, viz., “3d March, 1842, Rec’d, on the within note $655.” A witness who was present at the payment of the $655, and who was Ridenour’s clerk, stated that it was made in Indiana bank paper and scrip, but what proportion of each was paid he did not know, though he *thought there was not less than $400 in scrip; that the plaintiff, and the 'defendant Ridenour, by whom the payment was made, both stated at the time that scrip was as good as any other paper to “ lay up,” though plaintiff said he wanted the money for immediate use. Plaintiff, after Ridenour had paid to him all the treasury notes he had, which were then due, informed Ridenour that he would not receive any mo’re. Witness further stated, that there was a rumour at the time of payment, that the scrip (as the treasury notes were called), was depreciated, but he did not know whether it was true or not; that the fact was known at the place of Ridenour’s residence a few days afterwards, when it was understood that it had depreciated 40 per cent, at Cincinnati. He further stated, that he thought the payment was made about the time the depreciation took place; that it was several days after the *443 payment was made before he heard that the plaintiff was dissatisfied ; that when the payment was made, Ridenour offered to the plaintiff paper on the banks of Ginoinnati and North Carolina, which he (R.) said he would guaranty to be as good as Indiana bank paper, but plaintiff rejected it, saying he preferred the scrip. Another witness stated that until the 5th of March, 1842, scrip was passing at par in the neighbour-hood; that on the 8th of March he told the plaintiff that scrip was down; and that about that time plaintiff went to Ridenour for the purpose of returning it. Other witnesses testified that the depreciation took place about the last of February, and was known in the neighbourhood where the parties resided. On the foregoing testimony, the Court disregarded the payment made by Ridenour in treasury notes, and gave judgment against the defendants for the balance due on the note after deducting the payment made in bank paper.
We are not aware of any case, in which it has been decided that a payment in a currency depreciated merely, when there has been no fraud practiced, has been held to be invalid. Where the payer and the payee have been equally ignorant and equally innocent, unless the payment were made in money or paper that was forged, counterfeit, or entirely worthless, the maxim, melior est conditio defendentis, has applied. But where there has been a fraudulent concealment or a false ^representation, of a 'matter peculiarly within the knowledge of the payer, the law is- otherwise.
In Puckford v. Maxwell, 6 T. R., 52, the defendant on being arrested for ¿£80, gave to the plaintiff a draft for ¿£45, saying it would be immediately paid, and agreed to pay the plaintiff the residue of the debt in a few days, whereupon the plaintiff agreed that the defendant should be discharged out of custody. The draft was dishonoured, the defendant having no effects in the hands of the drawee. The Court held that there was no payment in that case; that the party receiving the draft might treat it as a nullity, and act as if no such bill had been given at all. The case of Stedman v. Gooch, 1 Esp. R., 3, and others that might be cited, are to the same effect.
*444 In Markle v. Hatfield, 2 J. R., 455, the payment, of a debt in counterfeit bank bills was held to be no payment. Vide, also, Young v. Adams, 6 Mass. R., 182; and The Pres., Direct., & Co. of the Bank of U. S. v. The Bank of Georgia, 10 Wheat., 333. And in Lightbody v. The Ontario Bank, 11 Wend., 9, S. C. 13 Wend., 101, where payment was made in the paper of a bank which had failed, and the paper of which had ceased to pass as a currency, although the, fact was unknown to either of the parties at the time, it was held that the loss fell on the payer.
Admitting the full force of the foregoing decisions, but without adopting either, which for the decision of the present case it is unnecessary to do, they do not meet the question under consideration. The treasury notes which were.paid by the appellants, were received by the appellee as so much money and credited on the note. They were a species of currency which passed as - money, and for some purposes were better than gold or silver. They were neither counterfeit nor worthless, nor is there any evidence to show that at the time of the payment Ridenour knew of their depreciation. And if he did, it does not appear but that their true value was as well known to MoGlurldn as it was to himself. McClurkin knowing the source from which they issued, received them, according to common usage, on the responsibilty of the maker. All the facts relative to their true value and character seem to have been as well known to the payee as they were to the payer. The payment having been made *in good faith, and the notes voluntarily received, we are aware of no principle of law that will authorize him to repudiate the payment.
We are also of opinion that the demurrers to the replications should have been sustained. It does not appear from them, but that both parties knew, or had the same opportunity of knowing, the true value of treasury notes; nor does it appear that there was a false representation by the defendant Ride-nour, of a fact peculiarly within his own knowledge, in consequence of which the plaintiff was imposed upon, or by which he was led to forego inquiry into a matter within his reach.
C. B. Smith, for the appellants.
S. W. Parker, for the appellee.
Per Curiam.—The judgment is reversed with costs. Cause remanded, &c.’